Brenda Lowe, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

486

Submitted on briefs November 17, 1982, to Judges ROGERS, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Oscar N. Gaskins, Gaskins & McCaskill, P.C.,* for petitioner.

*Francine Ostrovsky,* Associate Counsel, with her *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE WILLIAMS, JR., May 26, 1983:

Brenda Lowe appeals from the order of the Unemployment Compensation Board of Review denying unemployment compensation benefits on the basis of Section 402(e) of the Unemployment Compensation Law.[1] The Board found that the claimant engaged in insubordination, and that such behavior constituted

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e). Under this section, a claimant is ineligible for benefits for any week in which his unemployment is due to willful misconduct connected with his work.

willful misconduct under the Law. The claimant contends that the Board's findings of insubordination are not supported by competent evidence, and that the record taken as a whole does not support a legal conclusion that she engaged in willful misconduct. For the reasons which follow, we affirm the denial of benefits.

This case has a labyrinthine procedural history. The claimant applied for benefits on July 19, 1978. The Bureau of Employment Security (BES) denied benefits pursuant to Section 402(e). The claimant appealed BES's determination, and after a hearing held on August 21, 1978, an unemployment compensation referee reversed the denial of benefits. The employer filed a timely appeal to the Board. On the basis of minor discrepancies between two different transcripts which were made of the referee's hearing, the Board, on February 1, 1979, ordered a hearing *de novo* before a new referee. Despite the Board's directive for a hearing *de novo,* the referee, at a hearing held on October 5, 1979, took testimony to augment the original record in the case. When the referee announced that the hearing would not be *de novo,* the claimant and her attorney left the hearing without presenting any testimony. The referee proceeded to take testimony from the employer's witnesses. The additional testimony was forwarded to the Board, which on February 21, 1980, reversed the decision of the referee and denied benefits. The claimant timely appealed to this court from the Board's decision.

Pursuant to a petition by the Board and a stipulation between counsel for the Board and counsel for the claimant, this court, on September 3, 1980, remanded the record in the case for purposes of scheduling a hearing before a referee who would render a new decision pursuant to 34 Pa. Code §101.108(b).

The order specifically allowed the claimant to take further appeals should she disagree with the new decision of the referee or of the Board.

The Board, on September 19, 1980, issued an order remanding the case to a referee with no prior knowledge of the case. The referee was directed to schedule a further hearing, take additional testimony, and render a new decision. Accordingly, a hearing was held on November 6, 1980, at which time both the claimant and employer appeared and presented evidence. Both parties were represented. By a decision dated December 3, 1980, the referee denied benefits on the ground that the claimant engaged in willful misconduct. A timely appeal to the Board resulted in a decision on March 19, 1981 affirming the referee and denying benefits. This appeal followed.

Fortunately, the factual history of the case is less complicated. The claimant was employed as a secretary and teletype operator by WCAU-TV, a Philadelphia television station, for a period of almost eleven years, from October of 1967 to July of 1978. On July 18, 1978, according to testimony presented by the employer, the station's broadcasting director requested that the claimant temporarily answer his telephone during brief periods when his secretary was required to be away from her desk. The person who ordinarily would have relieved the broadcasting director's secretary was absent due to illness. The claimant, according to the employer's evidence, categorically and repeatedly refused to comply with the broadcasting director's request. At one point, she is reported to have said that she had been answering other peoples' phones for ten years, and that she refused to do so anymore. The claimant's stated reason for refusing to comply with the order was that there would be no one to answer the phone in her own office and moni-

tor the teletype if she was away from her desk. The broadcasting director determined that, as between the need to cover the claimant's phone and the need to cover his own, his own was more important. After discussion among station officials, including the broadcasting director, the station's personnel director and the general manager, and after consultation with the station's labor counsel, the claimant was given one final chance to comply with the directive. When she refused, she was dismissed for insubordination.

In contrast to the employer's version of the facts, the claimant denied that she ever refused to cover the broadcasting director's telephone. Rather, she testified that she merely expressed concern and sought guidance with respect to the fact that her personal telephone and teletype would be unattended during periods when she might be required to cover the broadcasting director's phone. The Board rejected the claimant's version of the occurrence, and concluded that the claimant did, in fact, repeatedly refuse a direct order from her superior. The Board, moreover, concluded that the claimant did not establish good cause for her refusal. Accordingly, the claimant was adjudged ineligible for benefits.

In support of her appeal, the claimant argues that mere questioning of the soundness of an employer's directive does not constitute willful misconduct. With that proposition we readily agree, so long as the questioning is done in a fashion which is not unreasonably offensive or unjustified. *See Boyer v. Unemployment Compensation Board of Review,* Pa. , 454 A.2d 524 (1982) (writing and distribution of letter critical of supervisor not willful misconduct where employee's actions were justifiable and reasonable). If the Board's finding had been that the claimant merely questioned the directive, this case would be in a sig-

nificantly different posture. However, the Board found that the claimant did more than criticize or question; it found that she repeatedly and categorically refused to comply with her superior's request.[2] We are authorized to reverse these findings only if there is no substantial evidence in the record to support them. *Taylor v. Unemployment Compensation Board of Review*, 474 Pa. 351, 378 A.2d 829 (1977); *Thomas v. Unemployment Compensation Board of Review*, 48 Pa. Commonwealth Ct. 630, 410 A.2d 101 (1980).

A review of the record reveals ample competent evidence to support the Board's finding that the

---

[2] The critical findings of the Board were:

3. On July 18, 1978, the Director of Broadcasting for the claimant's employer instructed the claimant to cover his phones whenever his own secretary had to be away from her desk. The Director of Broadcasting was not the claimant's immediate supervisor, but he was directly above her immediate supervisor in her employer's chain of command and had authority to instruct her concerning the performance of her duties.

4. The claimant responded to the Director that she would not perform these duties. The Director repeated his request, explaining that it would be only for a temporary period of time and only for three or four times a day. The claimant still refused to perform the task, stating that she had to cover the lines of her immediate supervisor, who was on vacation.

5. The claimant was then called into a Vice President's office for a meeting at which the Director of Broadcasting, the Station Manager, and a personnel specialist were present. At this meeting, it was explained to the claimant that, should she refuse this order once again, she would be terminated immediately. The Director of Broadcasting then asked the claimant whether she would cover his phones, as requested, and the claimant refused. She was terminated by her employer at that time for her insubordination.

6. The claimant was fired solely for her insubordination and not for any other reason.

claimant refused the order. The broadcasting director testified in detail about his face-to-face discussions with the claimant regarding his directive. He identified four occasions in which the claimant explicitly stated her refusal. Moreover, a second employer witness quoted the claimant as having given the following responses to a final request that she obey the directive: "I have been answering telephones for ten years and I refuse to do that." There can be no question that this testimony is competent and substantial. Thus, we have no choice but to reject the claimant's argument that her mere expression of concern over the order cannot be disqualifying.

However, the fact that a claimant refuses a direct order of a superior is not automatically disqualifying. Since the Pennsylvania Supreme Court's decision in *Frumento v. Unemployment Compensation Board of Review,* 466 Pa. 81, 351 A.2d 631 (1976) it has been clear that a claimant may not be determined guilty of willful misconduct if he had good cause for disobeying his employer's order. The good cause concept is predicated on the rationale that, where the action of the employee is justifiable or reasonable under the circumstances, it cannot be considered willful misconduct since it cannot properly be charged as a willful disregard of the employer's interests or rules or the standard of conduct the employer has a right to expect. *Id.* Furthermore, in determining willful misconduct, the reasonableness of the employer's request must be assessed. *Id.* Thus, if we find either that the employer's request was unreasonable, or that the claimant demonstrated good cause for her refusal, the claimant is entitled to benefits. We will assess both of these factors in turn.

First, we find nothing inherently unreasonable about the employer's request. The assignment was

well within the claimant's competence. Moreover, it would have been temporary, and would have involved her covering the broadcasting director's telephone for only short periods, three or four times a day. *Compare LeGare v. Unemployment Compensation Board of Review,* 498 Pa. 72, 444 A.2d 1151 (1982) (reasonableness of employer's deviation from personnel policy not supported by competent evidence). With respect to the claimant's motive for refusing the order, we do not find it reasonable or justifiable. Even assuming the veracity of the claimant's testimony that she was concerned with leaving the teletype unattended, we do not find her actions consistent with the good cause standard. It is the prerogative of the employer to make decisions with regard to allocation of personnel. The good cause concept affords claimants no license to flout this prerogative, even when they earnestly question the soundness of the employer's judgment. For the claimant to have complied with the order would have exposed her to no personal danger or detriment. *Compare Frumento* (compliance with employer's directive might have exposed claimant to criminal sanctions). Nor would other persons have been jeopardized by her compliance. Under these circumstances, reasonable and justifiable behavior by the claimant required her compliance with her employer's reasonable request. Her refusal must be deemed willful misconduct.

One additional issue raised by the claimant warrants a response. The claimant argues that by remanding the case for a hearing *de novo* after the claimant had prevailed before the referee, the Board gave the employer an unfair advantage in the case. Although it is unclear to us why the Board found it necessary to remand the case, particularly in light of the judgment of the Board's counsel that the differ-

ences between the transcripts were minor and immaterial, we can see no way in which the claimant was prejudiced. First of all, the claimant previously *insisted* that a *de novo* hearing be held. At one point, she refused to participate in a hearing on the ground that it would not be *de novo*. She cannot complain now that the remand was improper. Second, and more important, we have reviewed the transcripts of each of the three hearings held in this case. We can detect no way in which the employer's evidence materially differs from one hearing to another, such that it could be reasonably argued that the employer was afforded two "bites at the apple." The employer presented the same two witnesses at each hearing. Their testimony at each hearing was virtually identical in terms of substance. Thus, we conclude that, whatever procedural aberrations there may have been in this case they were not prejudicial to the claimant's right to a full and fair hearing.

We affirm the Board's order.

### ORDER

AND Now, this 26th day of May, 1983, the order of the Unemployment Compensation Board of Review at Decision B-181147-B is affirmed.