**The WASHINGTON TIMES, Petitioner,**

**v.**

**DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT
SERVICES, Respondent.**

**No. 84–1593.**

District of Columbia Court of Appeals.

Dec. 3, 1985.

Decided Sept. 17, 1987.

---

Joseph R. Damato, with whom Peter Chatilovicz, Washington, D.C., was on the brief, for petitioner.

N. Denise Wilson-Taylor was on the brief for respondent Michael A. Milwee and Grace Lockett Rosner, Washington, D.C., also entered an appearance.

Before STEADMAN, Associate Judge, REILLY, Senior Judge, and NEBEKER,[*] Associate Judge, Retired.

REILLY, Senior Judge:

Before us is a petition for review filed by the Washington Times (the "Times") urging us to set aside a decision of the Department of Employment Services (the "agency") overruling a claim examiner's determination that a mail room employee, Alfred Burley (the "claimant") had been discharged for misconduct and thereby disqualified for unemployment compensation under D.C. Code § 46–111(b)(1) and (2) (1985 Supp.). As our examination of the record discloses that the proceedings before the appeals examiner violated the Administrative Procedure Act, D.C.Code § 1–1501 *et seq.* (1981), we deem the affirmance of such examiner's decision by the agency

---

[*] Judge Nebeker was an Associate Judge of this court at the time of argument. His status changed to Associate Judge, Retired, on September 1, 1987.

to be error. Accordingly, we reverse and remand the case for a new hearing.

A brief summary of the proceedings follows:

When the discharged employee filed his application for unemployment compensation, the claims examiner took his statement and also interviewed two representatives of the employer, Ted Maduro, his immediate supervisor, and Cherran J. Evans, employment manager. They informed him that the claimant, who had repeatedly been warned for tardiness and absenteeism on prior occasions, was discharged for insubordinate conduct, *viz.:* refusing to comply with Maduro's instructions and threatening the latter with violence when assigned a task he was unwilling to perform. Determining that misconduct was established, the examiner served upon claimant a notice of disqualification. Claimant filed a timely appeal on a form binding him to "offer testimony and other evidence" in support thereof.

At a hearing conducted by Appeals Examiner Carmelle Corley, the claimant appeared personally with his counsel. Miss Evans, the employment manager of the Times, was the only person in attendance on behalf of the company and its only witness. After noting that the appeal was timely filed, the hearing officer stated "anyone ... going to be testifying to raise your right hand." Apparently, both Evans and the claimant were sworn as witnesses, for the next line in the transcript is "Witnesses sworn." [1]

Referring to rulings placing the burden of proving misconduct upon the employer,[2] the examiner required Miss Evans to go forward. She undertook to carry out this burden by offering documents from the personnel files which showed that on numerous occasions claimant had been given warning for absenting himself without authorization from his work station, insubordination, excessive absenteeism and tardiness, and had twice been suspended for disregarding such warnings before occurrence of the events which precipitated his

discharge. Despite the fact that Evans testified to the authenticity of these documents as business records and that two of the written warnings and a suspension notice (all of which recited the facts on which the disciplinary action was based) were signed by the claimant, as well as a supervisor, the hearing examiner excluded them as hearsay.

The examiner also refused to admit a document which Evans had personally prepared which described for the consideration of top management certain actions by claimant, which occurred shortly after his reinstatement, deemed flagrant enough to warrant discharge. On the last shift for which he reported, claimant had left his machine unattended for several minutes after the presses had started to run. Soon after he returned to the floor, he angrily defied Maduro's instruction to assist another employee who was trying to feed material into a balky piece of equipment. When this happened, Maduro punched out claimant's time card, and told him to leave the premises.

 The document which Evans offered consisted of a summary of verbatim interviews she had conducted with employees who were in the mail room at the time. One of these interviews was with the claimant himself. According to Evans' account of his remarks, he did not deny either incident, but sought to excuse the first on the ground that he had left his machine unattended to go to the bathroom and that when he refused later to follow his supervisor's orders, he informed her that he was on his "break." The examiner in excluding this exhibit stated that it was inadmissible because Evans had interviewed the witnesses in groups of three rather than individually. Yet Evans was ready to testify under oath that claimant had made this damaging admission to her. This ruling was plainly error as the hearing officer's criticism of the proffered evidence went to its weight rather than its admissibility. Before the hearing closed, the examiner rejected Evans' request to question the claimant because the latter had not testi-

---

1. That claimant was indeed a witness seems to have been ignored by the appeals examiner whose decision indicates that he did not testify. Actually, he did so usually in a response to questions she put to him which elicited answers with respect to his occupation, his work schedule, the fact he had signed documents recording disciplinary action. With respect to one of

these, he testified he had signed it without reading the text. She also made this erroneous assumption in ruling that the employer could not question the claimant, stating "... if he doesn't testify you can't ask him anything."

2. *Hawkins v. District Unemployment Compensation Board,* 381 A.2d 619, 622 (D.C.1977).

fied. This ruling was obviously in conflict with D.C.Code § 14–301 (1981), which makes a party to a proceeding "compellable to give evidence in behalf of any other party." The ruling also overlooked the fact that claimant had given some testimony, *supra*, note 1, thus making him subject to cross-examination under the Administrative Procedure Act.[3]

About a week later, the hearing examiner issued a decision reversing the claims examiner. She concluded:

> The employer's Employment Manager testified from and presented voluminous documentation in her efforts to satisfy the employer's burden of proof; however, upon careful scrutiny of each document by the claimant's attorney, as well as by the Examiner, it was determined that documentation offered consisted entirely of either hearsay evidence or evidence secured through an unreliable procedure.... Where only hearsay and other unreliable evidence is offered to support the employer's charge of misconduct, this evidence is not legally competent as evidence to support the employer's charge of misconduct.

▆▆▆ Taking exception to this decision, primarily on the ground that the rejected documents were not mere hearsay but business records admissible in the trial courts of this jurisdiction, Super.Ct.Civ.R. 43–I(a),[4] the employer appealed to the agency. The official, assigned to consider this appeal (the "agency"), recognized that the appeals examiner had erred in excluding these documents. Instead of making findings with respect to the factual material contained in these documents or remanding the case for further hearing, the agency compounded the errors committed at the hearing level by affirming the challenged decision of the appeals examiner in a "final decision" explaining:

> The Appeals Examiner was in error in failing to admit the documents offered by employer witness. The documents were in claimant's personnel jacket and

the person who had custody of that personnel jacket testified at the hearing. Clearly, the exhibits were admissible under the exception to the hearsay rule. The question remaining is the *weight* to be given to the exhibits, and whether the denial of their admission is cause for reversible error.

> The employer witness testified that, while claimant's immediate supervisor was *still* employed by employer, a decision was made to submit the case on the documents only and not the "live" testimony. The Notice of Hearing states that all interested parties *must appear* in person and *present* all their evidence and documents at the hearing. The employer made a decision not to do this. The employer had the burden of persuasion in this matter. If claimant believed that burden had not been met, he had no mandate to offer testimony. Claimant denied any misconduct. The employer has several witnesses with first-hand knowledge of what occurred that led to claimant's termination. None of these witnesses was produced.

> That the Appeals Examiner failed to admit the documents was not reversible error, since employer failed to establish, on an independent basis, that claimant was separated for misconduct.

There are several things wrong with this decision. One of the most conspicuous is a factual misstatement of the record, *viz.*, the sentence reading: "Claimant denied any misconduct."

The transcript of the appeals hearing shows that claimant never presented any testimony concerning evidence of misconduct. Even in his unsworn application, he did not specifically deny misconduct. He alleged that he was "discharged for retaliating verbally to the job discrimination"—in common law terms, a plea in confession and avoidance in contradistinction to a general denial.[5]

▆▆▆▆ The holding that even in a case where his adversary had attempted to

---

**3.** D.C.Code § 1–1509(b) provides every party with the right to present oral and documentary evidence, and to "conduct such cross-examination as may be required for a full and true disclosure of the facts."

**4.** Wholly apart from the shopbook rule, which made it mandatory to receive the personnel records, the documents signed by claimant should have been received as admissions against

interest—another exception to the hearsay rule. Evans' memorandum of her interview with claimant, since she volunteered to testify as to its veracity, also falls within this category.

**5.** Apparently, claimant was willing to concede that he had engaged in verbal abuse of his superiors on different occasions—conduct which was mentioned in the discharge notice and in some of the warning slips.

question him, the claimant "had no mandate to offer testimony" cannot be sustained. Granted that the employer has the burden of persuasion in a discharge-for-cause proceedings, the broad language of the Administrative Procedure Act [6]—to say nothing of D.C.Code § 14–301 (1981)—permits such party to carry that burden by calling the claimant as an adverse witness where such technique appears to be a feasible method of establishing relevant facts.[7]

■ In this case, the exclusion of documents which went to the heart of the issue of misconduct by establishing incidents of gross insubordination, violation of rules, and repeated disregard of standards of behavior an employer had the right to expect,[8] was prejudicial in the extreme. Thus, the agency conclusion that the exclusion of these documents did not amount to reversible error cannot be permitted to stand.

■ It is true, as the agency opinion points out, that the employer had it within its power to call actual eyewitnesses to the incidents of misconduct with which claimant was charged, but elected not to do so. This, however, was not fatal to its position, as the documentary evidence was unrebutted. Agency counsel has attempted to justify the challenged agency action as proper in the light of our holdings in *Jadallah v. District of Columbia Department of Employment Services*, 476 A.2d 671 (D.C. 1984) and *Curtis v. District of Columbia Department of Employment Services*, 490 A.2d 178 (D.C.1985). Neither case supports this proposition.

In those cases, the agency, in reaching decisions, relied on business records in one case (*Jadallah*) and unsworn testimony in the other (*Curtis*) as proving the facts of misconduct in disregard of sworn testimony to the contrary presented by the claimants. In reversing these agency decisions, we pointed out that the failure of the employers to produce the witnesses who had provided the information which was the basis of the disciplinary actions had deprived claimants of their right to effective cross-examination, and hence, the sworn testimony offered in rebuttal should have been credited. In neither case, however, did we declare that no weight whatsoever should have been accorded to the personnel records. Plainly, the facts which those records purported to show would have been sufficient to sustain the agency actions had not the claimants in those cases gone forward and given sworn testimony to rebut them.

■ In the instant case, claimant also had an opportunity to testify in rebuttal, but chose not to exercise it. Were it not for the fact that he was dissuaded from doing so by the hearing officer—an agency employee—we would be inclined to instruct the agency to enter an order reinstating the original determination of disqualification. On this state of the record, however, a new hearing is appropriate.

*Reversed and remanded.*

---

6. D.C.Code § 1–1509(b) (1981).

7. Although neither the opinion of the appeals examiner nor the opinion of the agency mentioned certain agency rules of practice, *viz.*, D.C. Reg., §§ 4613.5–7 which relieve claimants from offering evidence of misconduct under specified circumstances, require any person issuing statements alleging misconduct to be present and rule out "prior statements and written documents in the absence of other reliable corroborating evidence," the phraseology in the concluding paragraphs indicates reliance on such rules. This court has repeatedly admonished the agency that in the conduct of its proceedings it must comply with the Administrative Procedure Act; *see Wallace v. District Unemployment Compensation Board*, 289 A.2d 885 (D.C.1972), and the authorities cited therein. Plainly, the agency cannot avoid this mandate by adapting rules of practice in conflict with this statute. Thus, neither the agency or any of its hearing examiners should apply any of these rules if the impact of such application is to exclude evidence admissible or competent under the provisions of D.C.Code § 1–1509.

8. In *Hickenbottom v. District of Columbia Unemployment Compensation Board*, 273 A.2d 475, 477–78 (D.C.1971), we held such actions by an employee amounted to disqualifying conduct.