531 A.2d 590

Elaine M. Kalenevitch, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs July 22, 1987, to Judges CRAIG and PALLADINO, and Senior Judge BARBIERI, sitting as a panel of three.

*Elaine M. Kalenevitch,* petitioner, for herself.

*Gary L. Kelley,* Assistant Counsel, with him, *Clifford F. Blaze,* Deputy Chief Counsel, for respondent.

OPINION BY JUDGE PALLADINO, September 28, 1987:

This is an appeal by Elaine Kalenevitch (Petitioner) from an order of the Unemployment Compensation Board of Review (Board) which affirmed the decision of the referee and denied benefits.

Petitioner, an attorney, was employed by the Pennsylvania Credit Union League as Vice President, Legal and Government Affairs, for one year. She was terminated when she refused to comply with her supervisor's directive to follow company policy. The Office of Employment Security (OES) denied benefits and a full hearing was subsequently held. The referee's findings were as follows:

3. Claimant was initally employed by the League through the service of a private employment agency, which had prepared a general job description which included principle accountabilities of the position of Vice President, Legal and Government Affiars [sic], generally outlining the scope of responsibilities within the position, but not enumerating individual or specific duties.

4. The League had an internal policy which required all employees of the League to leave sign-out slips at the place of employment when an employee was going to be out of the office

and further to receive approval for periods of time when an employee was to be out of the office.

5.   Claimant, throughout the course of her employment, on occasion did not comply with the sign-out slip policy.

6.   The League had a further policy with which the claimant was familiar, that all employees were to work a full forty-hour work week and in spite of negotiations to adjust the claimant's sheduled [sic] work hours for her convenience, as a result of a medical problem, the cliamant [sic] did not, on many occasions, work the forty-hour work week.

7.   A condition of claimant's employment was that the claimant attend certain meetings related to the business of the League but the claimant, on several occasions, resisted the request and instructions of her immediate superior to attend such meetings because they involved travel time and were, on occasion, a considerable distance from the business office where the claimant regularly performed her services.

8.   The organization of the League in the offices in which the claimant worked is a relatively small business operation in which cooperation among staff members was an essential ingredient in order to assure the success of the purposes of the League. But the claimant, throughout the course of her employment, exhibited a steadied indifference to any matters other than those which were specifically assigned to her and referred to (but only in general terms) in the initial job description prepared by the employment agency.

9.   Claimant is a trained attorney and Law School graduate and exhibited a steadied indif-

ference to any and all matters other than those falling within her special area of expertise.

10. Claimant was not issued specific warnings, suspensions or other disciplinary action as a result of the above-described conduct, but had been made aware of the employer's general dissatisfaction about same in the ordinary day-to-day business and functioning of the League.

11. On 8/23/84 claimant's immediate supervisor addressed a brief communication to the claimant indicating a dissatisfaction with many of the factors referred to above and further directing the claimant to comply with the policy and procedures of the League.

12. On 9/6/84 the Claimant responded to her immediate supervisor in writing in a manner which reflected that of an advocate, rather than a cooperative employee or co-worker.

13. As a result of all of the above, the League requested claimant's resignation and when it was not forthcoming, the claimant was involuntarily separated from employment.

The only issue with which we are confronted in this appeal[1] is whether the Petitioner's conduct rose to the level of willful misconduct so as to make her ineligible for unemployment compensation benefits. Whether an employee's conduct is such as to rise to a level of willful misconduct is a question of law, subject to our review. *Harris v. Unemployment Compensation Board of Review*, 67 Pa. Commonwealth Ct. 537, 447 A.2d 1060 (1982).

---

[1] Our scope of review in an unemployment compensation case is limited to a determination of whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704; *Estate of McGovern v. State Employees' Retirement Board*, 512 Pa. 377, 517 A.2d 523 (1986).

An employee may question or disobey a direct order from a superior if it is unreasonable or if the employee has good cause. *Lowe v. Unemployment Compensation Board of Review,* 74 Pa. Commonwealth Ct. 485, 460 A.2d 870 (1983). When an employee refuses to perform an additional assignment "the pivotal determination is whether the additional assignment is a reasonable one, i.e. of such a nature that in the context of a claimant's primary job his employer could reasonably expect him to complete it." *Brennan v. Unemployment Compensation Board of Review,* 17 Pa. Commonwealth Ct. 569, 572, 333 A.2d 794, 795 (1975).

In the instant case, Petitioner refused to follow Employer's "sign-out slip" policy and refused to work the required 40 hour minimum work week. Also, in response to Employer's directive to comply with company procedures, Petitioner was insubordinate and refused to conform to the standard practices. Employer's requests to travel to business meetings and to follow basic company procedures were reasonable in light of Petitioner's position and she has not shown good cause for her conduct. Accordingly, we affirm.

## ORDER

AND NOW, September 28, 1987, the Order of the Unemployment Compensation Board of Review in the above-captioned matter is affirmed.