Durwood C. JAMES, Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, Respondent.

No. 90–AA–1361.

District of Columbia Court of Appeals.

Argued April 16, 1993.

Decided Oct. 14, 1993.

Durwood C. James, pro se.

Michael A. Milwee, for respondent.

Before ROGERS, Chief Judge, and SCHWELB and FARRELL, Associate Judges.

FARRELL, Associate Judge:

In discussing the admission of a particular form of hearsay, the Supreme Court has observed:

> [I]ndividual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts.... [A] piece of evidence, unreliable in isolation, may be-

come quite probative when corroborated by other evidence.

*Bourjaily v. United States,* 483 U.S. 171, 179–80, 107 S.Ct. 2775, 2781, 97 L.Ed.2d 144 (1987). This observation is relevant to the case before us in which we decide whether evidence chiefly—though not exclusively—hearsay in nature constituted "substantial evidence" of misconduct sufficient for us to sustain a hearing examiner's denial of petitioner's application for unemployment compensation. We hold that the evidence satisfied that standard, and therefore affirm.

## I.

### A.

Petitioner was employed as a security guard by Diamond Security, Inc., from April 21, 1988 through November 27, 1989, when he was fired as a result of a series of job-related acts of misconduct. After a Department of Employment Services (DOES) claims examiner denied petitioner's request for unemployment compensation, petitioner appealed, and an appeals examiner convened a hearing on February 22, 1990, at which petitioner and his former job supervisor testified. The examiner concluded that petitioner did not qualify for unemployment benefits because he had been discharged for misconduct. D.C.Code § 46–111(b) (1990). The examiner based this finding chiefly on disciplinary action reports (DARs) contained in petitioner's employment record, as well as the supervisor's testimony and the examiner's negative assessment of petitioner's credibility. The Office of Appeals and Review affirmed the examiner's decision.

### B.

The supervisor, John Steele, testified at the hearing that petitioner was fired because "over a period of time, [he] consistently and constantly continued to break the rules and regulations after being counselled by my supervisors as well as by myself...." The most recent incident, which was the "last straw" for the employer and resulted in the termination, took place on November 23, 1989,[1] when petitioner failed to report to

---

1. Petitioner had previously been terminated on     March 7, 1988, but was offered permanent reem-

work. Steele testified that after being informed of this fact, he called petitioner's home.[2] Petitioner's wife said that he was sick in bed and could not come to the phone. The following day petitioner called Steele to explain that he had been absent from work because he was sick. According to Steele, this violated the employer's established procedure "in respect to calling off duty that he was not *coming* to work" (emphasis added).

The record contains twenty-two disciplinary reports concerning petitioner prepared by various Diamond Security sergeants and generally signed by Steele, who also personally prepared and signed three of them. Among the offenses listed are: failing to report for duty, tardiness, falsely claiming he was at work, drinking or sleeping on duty, being out of uniform, taking home the company radio, having a television on the work site, and failing to obey orders. Petitioner signed seven of the nineteen reports without comment, indicating he had received and read them, and signed one other report under protest. Most of the reports were prepared the same day the misconduct occurred; others were prepared within three days (in one instance six days) of the incident. The appeals examiner relied specifically on seven of the reports,[3] but took account of the others ("The misconduct in this case *included* the following ..." (emphasis added)).

Although Steele did not prepare most of the DARs, he testified that he wrote the November 6, 17, and 23, 1989 reports since he was "the manager of the building that [petitioner] was working at," and he therefore had personal knowledge of these incidents. Otherwise, Steele would review such

reports and discuss them with the employee involved and "counsel" him. Steele listed a number of reports for which he had personally counseled petitioner contemporaneously with the infractions, testifying that petitioner was "personally present to review and to voice any objections" to the reports.

Petitioner did not deny speaking with Steele "about the problems that we had with the schedule and working at Diamond Security," but denied the basis for the reports. He contended that there were inconsistencies in the DARs, that he did not have knowledge of some of them, that they were false, and that they were written up in order to avoid paying him unemployment and as retribution for his having won a wage and hour award. He also objected to the fact that the persons who had written the individual reports were not present for him to cross-examine.

## II.

A decision by DOES must be supported by substantial evidence, *Jadallah v. District of Columbia Dep't of Employment Servs.*, 476 A.2d 671, 675 (D.C.1984), defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Nova Univ. v. Educational Inst. Licensure Comm'n*, 483 A.2d 1172, 1190 (D.C.1984), *cert. denied*, 470 U.S. 1054, 105 S.Ct. 1759, 84 L.Ed.2d 822 (1985) (citations omitted). Since the appeals examiner based her decision primarily on the evidence in the disciplinary reports, whose authors—except in the case of Steele—were not present to testify, we must decide whether the hearsay evidence presented was substantial as thus defined.

---

ployment on April 15, 1988, which he accepted.

2. It was disputed whether Steele or Sgt. Howe called petitioner's home. While Steele testified that he made the call, petitioner and his wife claimed that it was Howe who called. The DAR, signed by both Steele and Howe, states, "I called [petitioner's home]," and also states that "action [was] taken by" Howe. The DAR does appear to be in Howe's handwriting rather than Steele's, and, unlike the reports that were prepared solely by Steele, it contains both Steele's and Howe's signatures.

3. These were (1) the November 6, 1989 DAR, which stated that petitioner had been sleeping on

the job; (2) the November 2, 1989 DAR stating that petitioner was out of uniform; (3) the April 21, 1989 DAR stating that petitioner had falsely represented that he was on the job site; (4) the November 17, 1989 DAR stating that petitioner was late reporting for work; (5) and (6) the DARs of April 13 and 14, 1989, which cited petitioner for having a television on the job site; and (7) the November 23, 1989 DAR, which stated that petitioner had not reported for work, and that when he was called at home he refused to come to the telephone to report that he was sick. Petitioner denied all these incidents at the hearing, or stated that there was no basis for the reports.

■ "Hearsay evidence is admissible in administrative proceedings unless it is irrelevant, immaterial, or unduly repetitious." *Lim v. District of Columbia Taxicab Comm'n*, 564 A.2d 720, 724 (D.C.1989) (citation and quotation marks omitted); D.C.Code § 1–1509(b). "If hearsay evidence is found to be reliable and credible, it may constitute substantial evidence." *Simmons v. Police & Firefighters' Retirement & Relief Bd.*, 478 A.2d 1093, 1095 (D.C.1984) (citing *Johnson v. United States*, 202 U.S.App.D.C. 187, 190–91, 628 F.2d 187, 190–91 (1980)). At the same time, "administrative findings and conclusions based exclusively on hearsay [are subject] to exacting scrutiny." *Lim, supra.* More than once we have declined to uphold a DOES finding of misconduct where an employer's hearsay evidence was refuted by the claimant's sworn testimony. *E.g., Jadallah, supra; McLean v. District of Columbia Dep't of Employment Servs.*, 506 A.2d 1135, 1137–38 (D.C.1986).

■ We have not, however, mechanically rejected agency findings for lack of substantial evidence whenever the finding was based mainly, or even entirely, on hearsay evidence contradicted by sworn testimony. Rather, the test remains as we described it in *Simmons* and *Lim:* hearsay found to be reliable and credible may constitute substantial evidence, "especially … where the evidence is uncontradicted," *Simmons*, 478 A.2d at 1095; but without extrinsic corroboration (proof *aliunde* ) such evidence will be "scrutin[ized]" carefully. *Lim*, 564 A.2d at 724. *See also Jadallah*, 476 A.2d at 677 (Ferren, J., concurring) ("Absent some indicia of reliability, hearsay evidence alone should not be permitted to offset the sworn testimony of a witness and to constitute substantial evidence in support of an agency position"); *Martin v. District of Columbia Police & Firefighters' Retirement & Relief Bd.*, 532 A.2d 102, 109–10 n. 2 & accompanying text (D.C.1987); *Johnson, supra*, 202 U.S.App.D.C. at 190–91, 628 F.2d at 190–91 (cited in *Martin* and *Simmons* ) ("reject[ing] a per se approach that

brands evidence as insubstantial solely because it bears the hearsay label"; "[i]nstead … evaluat[ing] the weight each item of hearsay should receive according to the item's truthfulness, reasonableness, and credibility").[4]

■ In this case, a variety of factors confer reliability on the DAR reports, and these in turn, viewed together with Steele's testimony, provide substantial support for the examiner's finding that petitioner was terminated for conduct manifesting "a disregard of standards of behavior which the employer [had] a right to expect of his employees." D.C.Code § 46–111(b)(2). *See, e.g., Shepherd v. District of Columbia Dep't of Employment Servs.*, 514 A.2d 1184 (D.C.1986) (pattern of absenteeism and tardiness). Whether or not they fit within the hearsay exception for business records (a question we need not decide), the DARs were completed as part of Diamond Security's regular procedure for disciplining employees. They were prepared by a succession of sergeants contemporaneously with the events, and were routinely followed up by personal counseling, in some cases by Steele himself—who had personal knowledge of three of the incidents. This aggregation of prompt reports by different supervisors tends to disprove either that the DARs stemmed from faulty perception or memory or that the writers lacked objectivity or "disinterested[ness]." *Simmons*, 478 A.2d at 1095. Moreover, in large part they were "consistent with each other in that they described the same pattern of behavior" by appellant, *id.*—absence from or tardiness in reporting to work, falsely representing that he was at work, and sleeping or drinking on the job. The fact that Steele (who testified and could be cross-examined) had personally counseled petitioner following many of the incidents is important. Were the reports all or mostly baseless, as petitioner asserted at the hearing, one would expect him to have voiced some objection to them to Steele at the time; yet Steele testified to no such

---

4. These principles are consistent with DOES's evidentiary regulations. 7 DCMR § 312.7 provides:

Prior statements or written documents, in the absence of other reliable corroborating evidence, shall not constitute evidence sufficient to support a finding of misconduct by the Director.

denials or to any reason he had acquired to doubt the reliability of the reports based on petitioner's reaction during the counseling.

Petitioner had access to the reports before the agency hearing, *Simmons,* 478 A.2d at 1095; *Johnson,* 202 U.S.App.D.C. at 191, 628 F.2d at 191,[5] but his denial of misconduct was blanket and largely non-specific.[6] Other than to say that the DARs were "just written up to evade paying me unemployment," petitioner did not explain why or how the employer would have fabricated an extensive file of disciplinary reports prepared by several different sergeants. Moreover, the examiner discounted petitioner's credibility because of shifting answers he gave her about when, in relation to a new job he had begun, he had also applied for unemployment benefits.

All of these circumstances persuade us that the disciplinary reports were reliable proof which "a reasonable mind might accept as adequate to support [the] conclusion" that petitioner had engaged in misconduct justifying termination. *Nova Univ.,* 483 A.2d at 1190. Even if a small number of the DARs together might not have persuaded us of the reliability of the examiner's conclusion, the sheer cumulation of reports made the body of proof self-corroborating and the "sum of [the] evidentiary presentation" more trustworthy than "its constituent parts" would have been if viewed in isolation. *Bourjaily,* 483 U.S. at 179–80, 107 S.Ct. at 2781. This was no "attenuated evidentiary chain" as in *Jadallah,* 476 A.2d at 677 (criticizing reliance on "hearsay within hearsay"), nor a case where an appreciable gain in reliability would

have been achieved by requiring the authors of the individual reports to testify. Steele described both the process by which the disciplinary reports were prepared and the important follow-up in the form of counseling which regularly attended them and which he specifically performed in petitioner's case.[7] When added to this is the personal knowledge Steele had of three of the infractions on which the examiner expressly relied, there was no infirmity in the proof sufficient to permit us to reject the judgment of the hearing examiner.

*Affirmed.*

ROGERS, Chief Judge, dissenting:

The majority concludes that based on hearsay statements in the form of disciplinary reports, there is substantial evidence to support the agency's finding that petitioner was discharged for misconduct under D.C.Code § 46–111(b) (Repl.1990). The difficulty with this conclusion is twofold: (1) the petitioner's sworn testimony challenged the accuracy of the hearsay disciplinary action reports on which the employer relied, and (2) the employer's witness did not have personal knowledge of the events at issue.

Unlike the key decision on which the majority relies, *Bourjaily v. United States,* 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), in the instant case there were no surrounding circumstances to constitute independent evidence of the violations. In *Bourjaily,* there was subsequent evidence

---

5. As to the DARs that he had not signed, petitioner denied "even know[ing] they [were] in my file," but when the examiner pointed out that petitioner had "reviewed [the employer's] documents" before the hearing, petitioner did not claim otherwise.

6. It is argued that petitioner was not given the opportunity to explain each report. But, while the hearing examiner initially denied petitioner's request to respond to each report individually, she went on to state that petitioner "could go through one starting with—from September [1989] through the dates that [Steele] stated." Petitioner was also allowed to present "any other evidence" and to make whatever statements he wished.

  Petitioner did assert that the employer's rules did not explicitly prohibit watching television on

the job (one of the reported violations), but did not explain why after being warned not to do so on numerous occasions, he continued to bring a television to work. As for his explanation that he was sick on November 23, 1989—the "last straw"—this did not counter the employer's contention that he violated the procedure for reporting such absences, nor does it refute the numerous other documented instances of misconduct.

7. As Steele explained in conclusion: "In Mr. James['s] case, I allowed him to continue to work, because he was a good worker until he started to mess up, and then he just continued, *refused to conform to things that we talked about on each DAR* until the bottom [line], until finally I didn't have any choice but to terminate him" (emphasis added).

showing that the person engaged in the telephone conversation had appeared at the arranged place and done what he said during the telephone conversation he was going to do. *Id.* at 180–81, 107 S.Ct. at 2781–82. On that basis the Court was satisfied that even if each of the hearsay statements was unreliable, the subsequent events provided corroboration by independent evidence. *Id.* The Court stated that it was not deciding whether the hearsay statements standing alone would have been sufficient evidence of the conspiracy. *Id.* at 181, 107 S.Ct. at 2781. Furthermore, in *Bourjaily,* the issue was confined to the use of hearsay in making preliminary factual determinations on the admissibility of hearsay under an exception to the rule against hearsay, *see* FED.R.EVID. 104(a) & 801(d)(2)(E). *Id.* at 181, 107 S.Ct. at 2781. By contrast, in the instant case, the majority would broaden *Bourjaily* to allow use of hearsay to make the substantive finding, namely, whether there is substantial evidence of misconduct, without regard to the admissibility of such evidence under an exception to the hearsay rule. *See* majority opinion at 396, 399. Hence, its reliance on *Bourjaily* is misplaced.

In the instant case, the Department of Employment Services (DOES) had before it only the challenged hearsay disciplinary action reports and the testimony of a supervisory employee who provided no evidence contrary to the petitioner's sworn testimony that the particular disciplinary reports were prepared for the purposes of the unemployment compensation review and were false or otherwise inaccurate. There was no evidence of subsequent events to demonstrate the reliability of the disciplinary action reports (DARs) at issue. Contrary to the warnings of *Jadallah v. District of Columbia Dep't of Employment Servs.,* 476 A.2d 671, 676 (D.C. 1984), and *Washington Times v. District of Columbia Dep't of Employment Servs.,* 530 A.2d 1186, 1190 (D.C.1987), the majority, relying, in part, on a concurring opinion in *Jadallah, see* majority opinion at 398 (citing *Jadallah, supra,* 476 A.2d at 677 (Ferren, J., concurring)), upholds the agency's decision. Because the hearsay evidence on which the agency relied in finding misconduct was refuted by petitioner's sworn testimony, the agency's decision was not based on substantial evidence under *Jadallah, supra,* and, therefore, the case should be remanded to the agency for further proceedings.[1]

## I.

A review of the facts and agency proceedings is required to appreciate the limited nature of the employer's non-hearsay evidence. The only witness presented by the employer, John Steele, testified that he is generally responsible for reviewing field supervisors' DARs and discussing the DARs with the individual security guard.

Petitioner was employed as a security guard by Diamond Security, Inc. from December 30, 1986 until November 24, 1989, when he was terminated for a pattern of consistent and constant misconduct.[2] Following an intra-agency appeal and a hearing at which petitioner appeared *pro se,* the agency denied his request for unemployment benefits.[3] Petitioner contends that disciplin-

---

1. This court reviews the agency decision to determine if its findings are supported by substantial evidence in the record. *RosExpress v. District of Columbia Dep't of Employment Servs.,* 602 A.2d 659, 661 (D.C.1992); *Jadallah, supra,* 476 A.2d at 675–76.

2. Petitioner had previously been terminated on March 7, 1988, but he was offered permanent reemployment on April 15, 1988, following conferences held at petitioner's request at which it was determined that he should be immediately reinstated. In his job, petitioner was assigned to work at various locations. Shortly after being notified of his present termination, petitioner prepared a statement, dated November 27, 1989, in which he asserted that he felt his termination

was "pure harassment," stating that he was being terminated for using a sick day on November 23, 1989, after notifying his employer that he was ill, that he had worked mostly all weekends while employed by Diamond Security, and that he had no current disciplinary action for abusing the sick leave call in system.

3. The court has set forth the requirements for proof of misconduct under the statute. *See, e.g., Jones v. District of Columbia Unemployment Compensation Bd.,* 395 A.2d 392, 395 (D.C.1978). The term "misconduct" is defined by D.C.Code § 46–111(b) (Repl.1987). The burden is on the employer to show such misconduct as would disqualify the employee from receiving unemployment compensation benefits. *Jones, supra,*

ary action reports (DARs), which were the sole method of proof for all of the allegations of misconduct on which the agency relied, except the most recent one, are hearsay evidence that he disputed at the hearing.[4] In his words, the DARs "could have been written and stamp[ed] by any one."

An examination of the DARs on which the agency relied reveals, as the employer's witness, Mr. Steele, testified at the hearing, that field supervisors actually prepare the DARs.[5] The most recent DAR, which ostensibly was the immediate cause for the dismissal, was dated November 23, 1989, when petitioner did not show up for work. A supervisor called petitioner's home and was told that he was sick. The writer of the DAR then called petitioner's home and asked to speak with him. A person whom the writer stated was petitioner's wife told the writer that petitioner was sick and could not come to the telephone. In response, the writer informed petitioner's wife that petitioner was no longer employed by Diamond Security. Mr. Steele testified that he was the person who had made this call. In fact, however, the actual DAR, which is in the record, is signed "action taken by" Sgt. Howe on November 23, 1989.[6] Mr. Steele's name appears in signature form

in his reviewing capacity on November 24, 1989, and the description of the occurrence appears to be in the handwriting of Sgt. Howe. Thus, although Mr. Steele testified that he had first-hand knowledge of this incident, the record before the agency indicates that this DAR, like the others, was prepared by someone else and signed by Mr. Steele in his supervisory capacity.[7]

The appeals examiner relied on six incidents, aside from the November 23rd incident, in finding that petitioner had been discharged for consistent and constant misconduct. At the hearing, petitioner's testimony effectively refuted each DAR. *First,* the November 6, 1989, DAR stated that petitioner had been sleeping on the job. Petitioner testified that he was not at work on that day, explaining that a wage and hour dispute was occurring and he was on call.[8] *Second,* the November 2, 1989, DAR stated that petitioner was out of uniform. Petitioner testified that there was no basis for that report. *Third,* the DAR report of April 21, 1989, stated that petitioner had falsely represented that he was on the job site. In his testimony, petitioner denied a similar DAR that he said concerned June 24, 1989, claiming that

---

395 A.2d at 395. In addition, the employer must show that the employee had notice that his conduct would damage the employer's interest for which the employee may be discharged. *Id.* The agency's finding of misconduct, in turn, must be based "fundamentally on the reasons specified by the employer for the discharge." *Id.* (citation omitted).

**4.** The record contains sixteen DARs. Among the items for which petitioner was written up were: leaving his post without permission, drinking on duty, failing to show up for work, taking home the company two-way radio, having a television on site, reporting that he was on site when he was not, sleeping and being out of uniform.

**5.** In response to this evidence, petitioner objected to the hearsay nature of the reports, challenged the accuracy of some, and denied knowledge of others.

**6.** Petitioner, in a letter to the agency dated November 30, 1989, before the hearing, stated that he had used emergency sick leave on November 23, 1989, because he felt feverish and he had a friend call petitioner's employer. The letter stated that Sgt. Howe had called back to verify petitioner's illness, and that the following day,

when petitioner called the employer to say he was ready for work, he was told he was fired. After the hearing, petitioner submitted a statement from his common-law wife stating that she had talked with Sgt. Shirley Howe, not Mr. Steele.

**7.** The majority mistakenly reads the record to state that Mr. Steele has personal knowledge of the incidents on November 6, 17, and 23, 1989. *See supra,* majority opinion, at 397. However, Mr. Steele testified that he personally wrote the disciplinary violation reports, not that he was personally aware of the alleged violations. In fact, contrary to Mr. Steele's testimony, he did not personally write the disciplinary report for November 23, 1989. Further, the November 6, 1989, report written by Mr. Steele stated that "Mr. Michael Spencer ... reports that ... he had to wake up Ofc. Durwood James on several different occasions."

**8.** In a letter sent to the agency after the hearing, petitioner advised that he was mistaken about the date. He admitted being at work on November 6, 1989, explaining that the Wage and Hour Report was not available until now, although at the time of the appeals examiner's decision petitioner had disputed it.

he had not been on the job site because the supervisor had failed to pick him up. In addition, petitioner testified that it was not a fair write-up and that "a whole lot of these are the same way." In response to the hearing examiner's question whether he denied the dates that he failed to either call or report to work, petitioner testified that he always called: "I was there or I called ... and let them know that I wasn't going to be at work. I'm not that kind of employee."[9] *Fourth*, the November 17, 1989, DAR stated that petitioner was late reporting for work. Petitioner testified that all the reports for May 19 through November 24 were false and had no basis. *Fifth* and *sixth*, the DARs of April 13 and 14, 1989, cited petitioner for having a television on site. While petitioner was not afforded an opportunity to respond to these reports, petitioner stated in his April 9, 1990, appeal from the hearing examiner's decision that there were no rules forbidding television.[10]

Mr. Steele, for the employer, testified that petitioner was dismissed because he "consistently and constantly continued to break the rules and regulations after being counselled by my supervisors as well as myself." Mr. Steele explained that he had allowed petitioner "to continue to work, because he was a good worker until he started to mess up, and then he just continued, refused to conform to things that we talked about on each DAR until ... finally I didn't have any choice but to terminate him." Mr. Steele also testified that he had personally counselled petitioner on numerous occasions. He did not testify, however, that petitioner had ever admitted that he had violated any of the employer's rules or reasonable expectations after prior warnings. Nor did petitioner deny talking to Mr. Steele "about the problems that we had· with the schedule and working at Diamond Security." Rather, he testified that there were inconsistencies in the DARs, that he did not have knowledge of many of them, that some were false and that they were written up in order to avoid paying him unemployment. At the hearing, petitioner objected to the fact that the people who had purportedly written up the reports were not present for him to cross-examine, specifically citing 7 DCMR § 312.7 (1986).[11]

## II.

The majority concludes that in the face of sworn testimony contesting hearsay evidence, hearsay evidence standing alone can constitute substantial evidence to support a finding of misconduct warranting the denial of unemployment benefits. *See supra*, majority opinion, at 398–399. This controverts binding authority that hearsay evidence is not sufficient evidence where it is refuted by sworn testimony. *Jadallah, supra*, 476 A.2d at 676 (declining to hold that the direct sworn testimony of a witness on a crucial fact can be refuted by hearsay from a declarant available for trial); *see also Curtis v. District of Columbia Dep't of Employment Servs.*, 490 A.2d 178, 179–80 & n. 3 (D.C.1985) (failure to swear witnesses, simply reading documents into the record did not constitute sufficient evidence of misconduct). In *Jadallah, supra*, the court made clear that, notwith-

---

**9.** The only DAR charges on which the appeals examiner relied that petitioner did not specifically deny were those in April, 1989. But, the appeals examiner did not afford petitioner an opportunity to address each DAR separately when petitioner asked to address each one. Petitioner advised the examiner that he was objecting to the hearsay nature of the DARs and challenging their reliability. Given the constraints placed on petitioner by the examiner, the agency could not properly conclude that petitioner had failed to contest the DARs that were before the agency.

**10.** The agency maintains in its brief that this was an oblique admission that petitioner had a television on site. While this is one interpretation, it is also possible that petitioner was simply argu-

ing that regardless of who is believed, having a television is not a violation of the Diamond Security rules.

**11.** 7 DCMR § 312.7 provides:

Prior statements or written documents, in the absence of other reliable corroborating evidence, shall not constitute evidence sufficient to support a finding of misconduct by the Director.

*See also* 7 DCMR § 312.6, which provides:

In an appeals hearing, the persons who supplied the answers to questionnaires or issued other statements alleging misconduct shall be present and available for questioning by the adverse party.

standing the hearsay testimony on behalf of the employer:

> It is one thing to hold that hearsay evidence is admissible at agency hearings, but quite another thing to say that the direct sworn testimony of a witness on a crucial fact can be effectively refuted by hearsay, *i.e.*, the statements of persons not produced as witnesses—and hence not subject to cross-examination—when the party relying on such statements is in a position to call the declarants to the stand.

*Jadallah, supra*, 476 A.2d at 676. In reversing and remanding the case to the agency in *Jadallah, supra*, because the double hearsay was "too thin" to constitute substantial evidence, the court noted that the employer had failed to explain why security officials with direct knowledge of the misconduct were not called to testify at the agency hearing.[12] *Id.* at 677. Since *Jadallah, supra*, the court has continued to emphasize its concern about reliance by agencies on hearsay evidence when the declarant is available. *See McLean v. District of Columbia Dep't of Employment Servs.*, 506 A.2d 1135, 1137–38 (D.C.1986) (hearsay testimony contradicted by sworn testimony of witness does not constitute substantial evidence). *See also Lim v. District of Columbia Taxicab Comm'n*, 564 A.2d 720, 725 & n. 11 (D.C.1989) (reemphasizing that "[a]n administrative agency should not rely on hearsay to refute sworn testimony, when the party relying on the hearsay is able to call the declarant to the stand").

The record does not provide a basis on which to conclude that the DARs were reliable hearsay. First, the DARs were not business records falling within the exception to the hearsay rule.[13] Petitioner challenged not only the accuracy of the DARs, but testified that most of the DARs were "just written up to evade paying me unemployment," claiming that he thought he was being fired because he had won a wage and hour award. Mr. Steele's testimony did not address these allegations in petitioner's testimony and cannot, therefore, provide an evidentiary basis on which the appeals examiner could conclude that the DARs were within the business-records exception. *See Palmer v. Hoffman*, 318 U.S. 109, 114, 63 S.Ct. 477, 481, 87 L.Ed. 645 (1943) (business reports whose primary purpose is for litigation are not admissible under business-records exception to the hearsay rule). He never responded to petitioner's assertion by testifying that the DARs at issue were prepared as part of the employer's regular business operations and not primarily for use in unemployment compensation proceedings, and the hearing examiner made no pertinent finding. *See Coates v. Johnson & Johnson*, 756 F.2d 524, 550 (7th Cir.1985) (disciplinary memorandum admissible because used as part of "the systematic conduct of running a business" and "not prepared primarily with a view toward their use in a subsequent adversarial proceeding"). While personnel records may properly be accorded some weight, they cannot constitute sufficient evidence when rebutted by sworn testimony. *See Washington Times, supra*, 530 A.2d at 1190. The hearsay records on which the agency relied, therefore, did not constitute sufficient evidence on which to base a finding of misconduct under D.C.Code § 46–111(b) (Repl. 1990). *See Id.; Jadallah, supra*, 476 A.2d at 675–76, 677 (Ferren J., concurring); *see also* 3 KENNETH C. DAVIS, ADMINISTRATIVE LAW TREATISE § 16.6, at 243 (2d ed. 1980) (listing

---

**12.** In the instant case, many of the DARs were prepared by two people, Sgt. Howe and Sgt. Shaw. Hence, there is no basis on which the court can conclude that it would have been unduly burdensome on the employer to produce the persons who had prepared the DARs on which it was relying at the hearing.

**13.** The agency has maintained that the DARs are business records, and, therefore, admissible evidence in agency hearings without having to present as witnesses the people who prepared the DARs. It relies on *Washington Times v. District of Columbia Dep't of Employment Servs.*, 530 A.2d 1186 (D.C.1987). Although the court stated in that case that business records may constitute sufficient evidence to establish misconduct, the claimant in *Washington Times* did not give sworn testimony that directly rebutted those records. *Id.* at 1190. In that case, the court distinguished *Jadallah, supra*, and *Curtis v. District of Columbia Dep't of Employment Servs.*, 490 A.2d 178 (D.C.1985), precisely on the ground that those cases involved sworn testimony contrary to the hearsay testimony, in *Jadallah*, and to the unsworn testimony in *Curtis*. *Washington Times, supra*, 530 A.2d at 1190. The majority opinion does not discuss *Washington Times*.

circumstances to be considered in determining whether or not particular evidence should be relied upon); *cf. Curtis, supra,* 490 A.2d at 179–80 & n. 3.

Second, the credibility determination made by the appeals examiner misses the mark. The majority points out that the appeals examiner found that Mr. Steele was truthful and petitioner was not. *See supra,* majority opinion, at 399. However, this credibility finding cannot overcome the requirement that the agency's findings must be supported by substantial evidence. *Gunty v. District of Columbia Dep't of Employment Servs.,* 524 A.2d 1192, 1197 (D.C.1987) (citation omitted). The burden to show misconduct was on the employer, *see supra* note 3, and, in view of the employer's reasons for discharging petitioner—for "consistently and constantly continu[ing] to break the rules and regulations after being counseled"—the appeals examiner's reliance on the seven DARs challenged by petitioner's sworn testimony could not constitute substantial evidence of "misconduct" under the statute. *See Jones, supra,* 395 A.2d at 395. The employer's only witness, Mr. Steele, had no personal knowledge of the incidents, other than through hearsay reports from the field examiners.[14] Nor did he otherwise provide a basis, as did independent evidence in *Bourjaily, supra,* 483 U.S. at 180–81, 107 S.Ct. at 2781–82, on which the appeals examiner could determine that the DARs were reliable or admissible as business records. Thus, the appeals examiner's credibility determination could not overcome the deficiency of proof occasioned by the disputed DARs.[15]

Finally, the factors on which the majority relies in concluding that the DARs were reliable are peripheral to the issue of whether there was substantial evidence to support the finding of misconduct. The thrust of the majority's conclusion is that the DARs were inherently reliable because of their cumulativeness, the fact that they were created by different sergeants following company procedure, and their consistency.[16] *See* majority opinion at 398. Upon examination, these factors do not provide an adequate response when hearsay is challenged in sworn testimony in the absence of a showing that the declarants are unavailable to testify and there is no substantiating independent evidence of reliability.

The factors on which the majority relies confront neither petitioner's testimony that the DARs were false nor his testimony that they had been manufactured for the purpose of depriving him of his unemployment benefits. The truthfulness of petitioner's testimony was not inconsistent with the factors on which the majority relies. If the DARs are

**14.** Although Mr. Steele testified that he had personal knowledge of several incidents, the written DARs on which the appeals examiner relied show that *someone else reported the incident* and Mr. Steele signed the report in his supervisory capacity. The only possible exception involves the November 23, 1989 incident. Even aside from the controversy surrounding Mr. Steele's claim of personal knowledge of this incident—the fact that the DAR was signed by Sgt. Howe and apparently prepared in her handwriting, and that both petitioner and his wife maintained that Sgt. Howe had made the phone call and not Mr. Steele—Mr. Steele's testimony that he made the disputed telephone call did not constitute substantial evidence that would support a finding of misconduct based on a pattern of consistent and constant infractions of the employer's rules and regulations.

**15.** The agency cites numerous cases which hold that the conduct described in the seven DARs can constitute misconduct within the meaning of the statute. *See Shepherd v. District of Columbia Dep't of Employment Servs.,* 514 A.2d 1184, 1185 (D.C.1986) (pattern of absenteeism and tardiness); *Grant v. District of Columbia Dep't of Employment Servs.,* 490 A.2d 1115, 1117 (D.C. 1985) (sleeping on the job); *Colvin v. District Unemployment Compensation Bd.,* 306 A.2d 662, 664 (D.C.1973) (dismissed because left work early); *Kalenevitch v. Commonwealth, Unemployment Compensation Bd. of Review,* 109 Pa. Cmwlth. 549, 531 A.2d 590, 592 (1987) (refusal to follow company policy and procedures). However true this may be, the agency's findings are still required to be supported by substantial evidence. *See Liberty v. Police & Firemen's Retirement & Relief Bd.,* 410 A.2d 191, 194 (D.C. 1979) (holding that remand is necessary if a court is in substantial doubt whether an administrative agency would have made the same ultimate finding with erroneous findings removed from consideration).

**16.** The majority also states that "the sheer cumulation of reports made the body of proof self-corroborating." *See supra,* majority opinion, at 399. This argument follows the logic of "where there is smoke there must be fire," an adage not invariably known for its reliability.

false, the fact that there are a number of reports makes them no less false; the employer's witness had no personal knowledge of the incidents set forth. in the DARs. The fact that the DARs were prepared pursuant to company procedure does not necessarily mean that the particular DARs challenged by petitioner were not prepared for reasons other than his unemployment disqualification; an assertion that the employer's witness did not address. Neither did the fact that the DARs were prepared according to general company procedure mean that the DARs were accurate. *See also supra* note 2. The fact that the DARs were consistent can cut both ways: either they can be read as the majority suggests or, read as too consistent, indicating that they were manipulated, especially in view of the fact that many of the DARs were prepared by two sergeants. *See supra* note 12. The appeals examiner made no findings on the relevant points relating to these factors, relying instead on a credibility determination that missed the mark since Mr. Steele was not in a position to address the accuracy of the reported incidents and did not testify that the DARs at issue were not written for unemployment compensation purposes. In other words, the existence of the majority's factors are peripheral to the issue of whether there was substantial evidence of misconduct based on the employer's hearsay evidence which was challenged in sworn testimony.

Accordingly, because *Jadallah* is controlling, the case should be remanded to the agency for further proceedings, and I respectfully dissent.