*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-AA-476

OMAR COOPER, PETITIONER,

07/20/2017

FILED
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

v.

STARBUCKS COFFEE CORPORATION, RESPONDENT.

On Petition for Review of a Final Order
of the Office of Administrative Hearings
(DOES-368-15)

(Hon. Jesse P. Goode, Administrative Law Judge)

(Submitted December 1, 2016                    Decided June 6, 2017)[*]

*Weyinmi Shekoni*, Student Attorney (No. 14599), *Sempian Sooriakumar*, Student Attorney (No. 14600), and *Elliott S. Milstein*, Supervising Attorney, were on the brief for petitioner.

Before BECKWITH and MCLEESE, *Associate Judges*, and NEBEKER, *Senior Judge*.

NEBEKER, *Senior Judge*: Starbucks Coffee Corporation ("Starbucks"), respondent, terminated Omar Cooper, petitioner, due to his admitted use of profane language and alleged pushing of a co-worker, Deniene Sanders. Mr. Cooper,

---

[*] The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published by direction of the court.

represented by student attorneys, challenges whether the Office of Administrative Hearings ("OAH") erred in ruling that he is ineligible for eight weeks of unemployment compensation when the Administrative Law Judge ("ALJ") only relied upon hearsay evidence. Starbucks did not file a brief. We reverse and instruct OAH to award Mr. Cooper the requested unemployment benefits.

## FACTS

Based on a business decision, Starbucks's litigation strategy relied entirely on the testimony of store manager Stephanie Brown and an unsigned, unsworn letter allegedly written by Michael McDuffie, another employee. Ms. Brown's testimony consisted mostly of secondhand information: Ms. Sanders notified Ms. Brown that during the morning coffee rush in DuPont Circle Ms. Sanders poured two espresso shots left on the bar into the sink, which caused Mr. Cooper to exclaim "what the fuck are you doing" and push Ms. Sanders. Ms. Sanders mistakenly believed the espresso shots had gone stale. Mr. Cooper denied pushing Ms. Sanders, but admitted that he used a profane statement. Even though Mr. Cooper testified that he offered to apologize to Ms. Sanders again in Ms. Brown's presence, Ms. Brown testified that she did not know whether Mr. Cooper and Ms. Sanders conversed after the incident.

At the request of Ms. Brown, Mr. McDuffie memorialized what he witnessed during the incident. A photocopied version containing redactions was entered into evidence. Apparently, the signature of the unsworn letter was redacted. Ms. Brown alleged that she had the original document and testified that Mr. McDuffie signed the letter. Nonetheless, the letter as entered into evidence is unsworn and unsigned. In sum, the letter states that Mr. Cooper used profane language and pushed Ms. Sanders.[1]

Following the conclusion of Starbucks's case-in-chief, Mr. Cooper moved for a "directed verdict" because Starbucks only put forth uncorroborated hearsay evidence, which is insufficient to constitute substantial evidence. The ALJ denied the motion.

Mr. Cooper testified that he has consistently denied the alleged pushing. The only indication that Mr. Cooper was inconsistent in his innocence was his termination letter stating he pushed Ms. Sanders.[2] To this end, Mr. Cooper

---

[1] Mr. Cooper takes issue with the discrepancy between the profane language attributed to him by the note—"What the fuck are you doing"—and Ms. Brown's testimony of Ms. Sanders's verbal report—"What the fuck!". The distinction for purposes of this appeal is immaterial.

[2] The termination letter was entered into evidence but was not relied upon by OAH. There is no indication as to who prepared the letter for Starbucks.

testified that although he left the employee statement section blank and signed the letter, he did not agree with its contents. At that time, Mr. Cooper believed objecting to the letter's contents was futile because Starbucks had already informed him of its decision to terminate and he felt he had no other choice. Ms. Brown testified that Mr. Cooper consistently denied pushing Ms. Sanders.

To find that Starbucks's hearsay evidence was corroborated, the ALJ used Mr. Cooper's apology to Ms. Sanders. The ALJ asked why he apologized if profane language was ordinary in the workplace and Mr. Cooper responded that there had never been any animosity between them and that he felt bad because Ms. Sanders informed him that she was only trying to help and because she is old enough to be his mother. Mr. Cooper was already on his way to the employees-only area where he saw Ms. Sanders and apologized. Because profane language was commonplace at this Starbucks location, the ALJ concluded that an apology would be unnecessary unless the push actually occurred.

## ANALYSIS

We review decisions of OAH to determine if they are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. OAH's

decision will be affirmed if "(1) OAH made findings of fact on each materially contested issue of fact, (2) substantial evidence supports each finding, and (3) OAH's conclusions flow rationally from its findings of fact." *Rodriguez v. Filene's Basement Inc.*, 905 A.2d 177, 180-81 (D.C. 2006). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," even if this court would have reached a different result. *R.B. v. United States Envtl. Prot. Agency*, 31 A.3d 458, 462 (D.C. 2011). To successfully prevent a former employee from collecting unemployment benefits due to misconduct, "[t]he party alleging misconduct shall" carry the burden to present sufficient evidence. 7 DCMR § 312.2 (2016).

Hearsay may constitute substantial evidence in administrative proceedings, with the weight, ranging from minimal to substantial, being accorded after a "case-by-case evaluation of the reliability and the probative value of the evidence." *Compton v. District of Columbia Bd. of Psychology*, 858 A.2d 470, 478 (D.C. 2004). Findings and conclusions drawn solely from such evidence, however, "are subject to exacting scrutiny." *R.B.*, 31 A.3d at 463. Further, "in an appeal hearing, the persons who . . . issued . . . statements alleging misconduct shall be present and available for questioning by the adverse party," § 312.9, and "prior statements or written documents, in the absence of other reliable corroborating evidence, shall

not constitute evidence sufficient to support a finding of misconduct by [OAH]," § 312.10. Stated differently, to use hearsay evidence in a misconduct hearing, the unemployment benefit regulations "are even more demanding than" the *Compton* factors because the regulations place emphasis "on live testimony by the persons who have alleged misconduct and on the discharged employee's opportunity to question them." *See R.B.*, 31 A.3d at 463 (citing *Compton*, 858 A.2d at 477).

Mr. Cooper plainly prevails pursuant to OAH's own regulations. At the start of the hearing, the ALJ reminded Starbucks that it carried the burden of proof and the obligation to proceed first. Starbucks only called one witness, Ms. Brown. She neither witnessed the alleged incident nor made the allegations of misconduct. In other words, Starbucks only presented "prior statements or written documents," which "shall not constitute sufficient evidence" absent corroborating evidence. § 312.10.

There are only two pieces of evidence that had the potential to be corroborating evidence: (1) the termination letter and (2) Mr. Cooper's testimony. Only the latter was relied upon, but neither provides a basis to find substantial evidence.

Even if the ALJ had chosen to rely on the termination letter, the hearsay evidence would not be corroborated. The termination letter is itself hearsay evidence. This court has adopted Federal Rule of Evidence 801 (d)(2), *Johnson v. Leuthongchak*, 772 A.2d 249, 250 (D.C. 2001), which makes a statement that is "adopted or believed to be true" by a party opponent not hearsay, as opposed to statements that remain hearsay but are excepted. *Compare* Fed. R. Evid. 801 (d)(2)(B), *with* Rules 803 & 804. Seemingly, Mr. Cooper adopted the statement that he pushed Ms. Sanders when he signed the termination letter.[3]

It is, however, not that simple for a statement to be adopted by a party opponent. In order for a statement to be adopted, specifically through an admission by silence, it must be reasonable to conclude that in light of all the surrounding facts and circumstances that the party opponent actually heard, understood, and acquiesced to the statement after having an opportunity to deny it. *Brown v. United States*, 464 A.2d 120, 123-24 (D.C. 1983) (stating exemption applies "if it clearly appears that the [party opponent] . . . unambiguously assented to those statements" (internal quotations omitted)). For silence to be considered evidence of acquiescence, it must have been "natural under the circumstances to

---

[3] Mr. Cooper denied the allegation both before and after signing the termination letter.

object to the assertion in question." *United States v. Hale*, 422 U.S. 171, 176 (1975) ("silence is commonly thought to lack probative value on the question of whether a person has expressed tacit agreement or disagreement with contemporaneous statements of others").

Here, the termination letter was prepared by Starbucks after "a recent partner resources investigation" found that Mr. Cooper "pushed a fellow [employee]"—the letter was merely an adoption of Ms. Sanders's and Mr. McDuffie's depiction of the event. While it is true that Mr. Cooper left the employee statement section blank, Mr. Cooper's unrebutted explanation was that he only signed the letter because he believed he had no other choice. Indeed, right before presenting Mr. Cooper with the termination letter, Ms. Brown informed him that Starbucks had already decided to fire him. Other than the letter, Mr. Cooper has consistently denied the pushing allegation, including under oath. *Washington Times v. District of Columbia Dept. of Emp't Servs.*, 530 A.2d 1186, 1190 (D.C. 1987) (hereinafter "*Washington Times (1987)*") ("failure of employers to produce the witnesses who had provided the information which was the basis of the disciplinary actions [] deprive[s] claimants of their right to effective cross-examination, and hence, [] sworn testimony offered in rebuttal [of such hearsay evidence] should have been credited"). Based on all of the surrounding circumstances and facts, Mr. Cooper's

silence was reasonable; inversely, it is unreasonable to conclude that it clearly appears that Mr. Cooper unambiguously assented to the pushing allegation. As such, the termination letter's pushing statement remains hearsay.[4] Moreover, the termination letter was founded upon the hearsay evidence that it would have corroborated. *See McLean v. District of Columbia Dept. Emp't Servs*., 506 A.2d 1135, 1137-38 (D.C. 1986) (finding letter to be hearsay that merely restated hearsay and thus making it not corroborative). Under these circumstances, the termination letter does not provide sufficient corroboration.

On the critical issue whether Mr. Cooper pushed Ms. Sanders, Mr. Cooper's testimony contradicted rather than corroborated Starbucks's hearsay evidence. Although some of Mr. Cooper's testimony—such as that Mr. Cooper apologized to Ms. Sanders—was consistent with Starbucks's hearsay evidence, we do not view that testimony as providing sufficient corroboration.

Repeatedly, this court has stated that administrative agencies "should not rely on hearsay to refute sworn testimony, when the party relying on the hearsay is

---

[4] As noted, hearsay may be introduced into evidence at administrative hearings. This principle of law is not disturbed as we recognize that "individual agency members are presumed capable of properly assessing the reliability and weight of hearsay evidence." *Kopff v. District of Columbia Alcoholic Beverage Control Bd.*, 381 A.2d 1372, 1385 (D.C. 1977).

able to call the declarant to the stand." *E.g.*, *Lim v. District of Columbia Taxicab Comm'n*, 564 A.2d 720, 725 (D.C. 1989) (citing *Jadallah v. District of Columbia Dep't of Emp't Servs*., 476 A.2d 671, 676 (D.C. 1984) (reversing a finding of misconduct grounded on testimony "not based upon [] personal knowledge of events, but rather on a written statement that petitioner signed outside [the witness's] presence")). This principle is at its apex when the employer's case-in-chief is solely built upon disputed hearsay evidence that is central to the allegations of misconduct because credibility becomes the critical issue. *See Compton*, 858 A.2d at 476, 479-80. In such a case, the ALJ's ability to resolve conflicting testimony is compromised, making the live testimony preferred. *See id.* at 479-80 (stating cross-examination and confrontation are likewise "all the more critical," but noting that after "heavily discounting the hearsay" of an un-called, available declarant, "*strong* corroboration" can cause the "exclusive reliance on disputed hearsay" to constitute substantial evidence (emphasis added)).

In *Compton*, the petitioner provided sworn testimony to rebut the government's hearsay evidence—deposition testimony—that he had engaged in professional misconduct. *Id.* at 473 (doctor-patient sexual misconduct). The government attempted to corroborate the hearsay by soliciting testimony from both of petitioner's medical practice partners and through limited testimony of the

deposed. Petitioner's partners testified that the patient had discussed her sexual misconduct allegations with them. *Id.* After this court examined the corroborative evidence, it discovered that the government's hearsay evidence was "given greater weight warranted." *Id*. at 479; *see also id*. at 479-80 (finding ALJ could not resolve the "conflicting testimony" in favor of the government absent "some corroboration"). Similarly, in *Washington Times v. District of Columbia Dept. of Emp't Servs*., 724 A.2d 1212 (D.C. 1999), the employer only called one witness, Kenneth McIntyre, who was an editor with general oversight responsibility of all Metro desk employees. 724 A.2d at 1214. McIntyre, however, did not directly supervise the petitioner, and his testimony was entirely based on information provided to him from those who had direct contact with petitioner. *Id.* In other words, the employer only presented hearsay evidence. Petitioner took the stand and told his story of the circumstances that lead to his termination. *Id*. at 1215. This court, citing § 312.10, found that McIntyre was not in a position to contradict the testimony the petitioner who was present at the occurrence of the alleged misconduct and ruled that McIntyre's testimony did not corroborate the prior statements or written documents that constituted an "overwhelming majority" of the employer's evidence. *See id.* at 1218, 1220 (internal quotations omitted).

Ms. Brown is not in a position to contradict Mr. Cooper's testimony that impeached Starbucks's evidence because she did not observe the alleged incident of misconduct. *Cf. General Ry. Signal Co. v. District Unemployment Comp. Bd.*, 354 A.2d 529, 532 (D.C. 1976) (unless person who answered questionnaires is available for cross-examination, documents are "'not reliable, probative, and substantial evidence'" in administrative "proceeding where impeaching evidence has been introduced"). Moreover, Starbucks was the party relying on the hearsay evidence and was in a position to call the declarants. *See Jadallah*, 476 A.2d at 676 (stating hearsay cannot effectively refute "the direct sworn testimony of a witness on a crucial fact . . . when the party relying on such statements [was] in a position to call the declarant"). As such, Starbucks's litigation strategy compromised the ALJ's ability to resolve the conflicting testimony and the sworn testimony from the witness present at the occurrence of the alleged incident—Mr. Cooper's testimony—is preferred. *See Washington Times (1987)*, 530 A.2d at 1190 ("sworn testimony offered in rebuttal should have been credited"). Consequently, Starbucks's hearsay evidence is not strongly corroborated and carries minimal weight. *See Compton*, 858 A.2d at 478, 480.[5] Therefore, the

---

[5] Hearsay evidence was strongly corroborated in *James v. District of Columbia Dept. of Emp't Servs.*, 632 A.2d 395 (D.C. 1993). In *James*, the employer called petitioner's supervisor to testify regarding the twenty-two disciplinary action reports contained in petitioner's employment record. *Id*. at 396-

(continued…)

record lacks substantial evidence to support a finding of misconduct to disqualify Mr. Cooper from unemployment benefits.

Because Starbucks decided it would only call Ms. Brown as a witness, OAH's decision is reversed and the matter is remanded so that the ALJ may order the benefits sought as it would not be "just [under] the circumstances" for Starbucks to receive a further opportunity to expand on its previous position. D.C. Code § 17-306 (2012).

*So ordered.*

---

(…continued)

97. Having only prepared three of these reports, the supervisor discussed the contents of the additional reports with the petitioner. *Id*. at 397. The appeals examiner predominantly based her decision to deny benefits on these reports. *Id.* As a result, this court had to decide whether the hearsay evidence constituted substantial evidence. *Id.* Substantial evidence existed due to a litany of factors evincing strong corroboration: (1) the reports were regularly completed as part of employee discipline procedure; (2) numerous supervisors completed the reports; (3) the reports were completed contemporaneously with the incidents; (4) the number of reports; (5) the reports, importantly, demonstrated a consistent pattern (citing *Simmons v. Police & Firefighters' Ret. & Relief Bd*., 478 A.2d 1093, 1095 (D.C. 1984)); (6) the testifying supervisor had some personal knowledge; and, similarly, (7) the testifying supervisor discussed most of the reports with petitioner and stated that petitioner never voiced any objection to the contents of the reports nor did petitioner react in any way that would cast doubt on the reliability of reports. *See id*. at 398. While these factors are not exclusive or present in every unemployment benefits case, similar factors are certainly not present here.