*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 24-AA-0582

YAZAM, INC., D/B/A EMPOWER, PETITIONER,

V.

DISTRICT OF COLUMBIA DEPARTMENT OF FOR-HIRE VEHICLES, RESPONDENT.

On Petition for Review of an Order of the
District of Columbia Office of Administrative Hearings
(2024-DFHV-00001)

(Argued May 29, 2025                    Decided September 25, 2025)

*Matthew M. Madden*, with whom *Lauren C. Andrews* was on the brief, for petitioner. After the case was argued, this court granted *Lauren C. Andrews*'s motion to withdraw as cocounsel of record.

*Dia Rasinariu*, Assistant Attorney General, with whom *Brian L. Schwalb*, Attorney General for the District of Columbia, *Carolina S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, and *Graham E. Phillips*, Deputy Solicitor General, were on the brief, for respondent.

Before BECKWITH, EASTERLY, and MCLEESE, *Associate Judges*.

BECKWITH, *Associate Judge*: Yazam, Inc., doing business as Empower, is a private vehicle-for-hire company, selling app subscriptions to drivers, who then sell their rideshare services to customers on the app. *Yazam, Inc. v. D.C. Dep't of For-*

*Hire Vehicles*, 310 A.3d 616, 619, 622 (D.C. 2024) (*Yazam I*). The Department of For-Hire Vehicles (DFHV) ordered Empower to cease its operations in the District of Columbia because the company failed to register with the agency as required by statute. Empower requested an expedited hearing on the validity of the cease-and-desist order before the Office of Administrative Hearings (OAH), which upheld the order. Empower appeals, and we affirm.

### I. Background

DFHV has exclusive authority to regulate the vehicle-for-hire industry in the District. *See* D.C. Code § 50-301.07; *Yazam I*, 310 A.3d at 624. The agency may take various enforcement actions, including fining individuals, issuing cease-and-desist orders, and impounding vehicles. 31 D.C.M.R. § 703.1. DFHV may issue a cease-and-desist order if it "has reason to believe that a person is violating a provision of [its regulations] or other applicable law and the violation has caused or may cause immediate and irreparable harm to the public." 31 D.C.M.R. § 705.1.

"Empower is a private vehicle-for-hire company subject to DFHV's regulatory authority." *Yazam I*, 310 A.3d at 619. The company offers digital software, in the form of a phone application, that enables drivers "to connect with passengers and give them rides in private vehicles for hire." *Id.* at 624. Empower differs from other major rideshare apps, such as Uber and Lyft, in that Empower

sells monthly software subscriptions to drivers, who then set their own rates for rides and receive the entire fare from the riders.

In 2020, DFHV first issued a cease-and-desist order to Empower for failing to register as a private vehicle-for-hire company. *Id.* at 621. OAH upheld the order, but we reversed, holding that although Empower is a private vehicle-for-hire company subject to DFHV's regulations, the agency failed to present proof of any immediate and irreparable harm to the public from Empower's nonregistration. *Id.* at 622, 628-29. Weeks after we published our decision, DFHV issued a compliance order requiring Empower to register and show compliance with various other statutory provisions.

Receiving no response, DFHV issued another cease-and-desist order to Empower for failing to register or submit the documentation defined in the compliance order. As before, the order cited three registration provisions: D.C. Code § 50-301.29a(12) (requiring private vehicle-for-hire companies to register with DFHV), 31 D.C.M.R. § 1605.1 (requiring digital dispatch services to register with DFHV), and 31 D.C.M.R. § 1902.1 (requiring private sedan businesses to register with DFHV). *See Yazam I*, 310 A.3d at 621. The order stated that Empower's lack of compliance and nonregistration "compromise the ability of DFHV to ensure that Empower and its drivers meet safety and legal standards, thus endangering public

safety." The agency highlighted—as "an illustration of this harm"—Shawn Yaeger, an Empower driver who was fined and whose car was impounded by DFHV because Empower is unregistered, causing Mr. Yaeger to miss an important medical appointment and delay his cancer treatment.

After conducting a hearing, OAH upheld the cease-and-desist order, concluding that Empower was violating several other statutory provisions, such as those related to requiring background checks and trade dress, and that several of these violations had the potential to cause immediate and irreparable harm to the public. Specifically as to nonregistration, OAH concluded that "the causal link between Empower's failure to register and Mr. Yaeger's delayed treatment was [not] sufficiently close" but there was "a substantial risk that DFHV will issue Empower Drivers $500 [citations] and impound their vehicles based on Empower's unregistered status," especially considering that "Empower's target market is so large" and "many, if not most, Empower drivers are unaware of the risks."

## II. Analysis

### A. The Cease-and-Desist Order

"This court must affirm an OAH decision when (1) OAH made findings of fact on each materially contested issue of fact, (2) substantial evidence supports each

finding, and (3) OAH's conclusions flow rationally from its findings of fact."[1] *Rodriguez v. Filene's Basement Inc.*, 905 A.2d 177, 180 (D.C. 2006). "Substantial evidence is more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cooper v. Starbucks Coffee Corp.*, 164 A.3d 66, 68 (D.C. 2017) (quoting *R.B. v. EPA*, 31 A.3d 458, 462 (D.C. 2011)). "OAH's legal conclusions must be sustained unless they are 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Rodriguez*, 905 A.2d at 181 (brackets omitted) (quoting D.C. Code § 2-510(a)(3)(A)).

---

[1] The day before oral argument, Empower filed a motion to supplement the record with documents related to its ongoing attempts to register with DFHV, which we denied. In addition, after oral argument, Empower informed the court that DFHV issued a new cease-and-desist order relying on grounds different from those in the order before us. Empower suggested that we "consider whether to remand to OAH or hold the appeal in abeyance to allow OAH to decide in the first instance" whether the new cease-and-desist order "supersedes and/or renders moot" the one before us. DFHV denies that the new cease-and-desist order affects this appeal, and we agree. "Our review . . . is limited to the evidence in the administrative record before the agency," *Friends of McMillan Park v. D.C. Zoning Comm'n*, 211 A.3d 139, 148 (D.C. 2019), and we generally decline to consider any "facts that were not presented to or judicially noticed by" OAH, *Wonder Twins Holdings, LLC v. 450101 DC Hous. Tr.*, 326 A.3d 768, 775 n.2 (D.C. 2024) (quoting *Mejia-Cortez v. United States*, 256 A.3d 210, 215-16 (D.C. 2021)); *see* D.C. Code § 2-510(a) ("The Court shall hear and determine all appeals upon the exclusive record for decision before . . . the agency."). The primary issue before us is whether OAH properly upheld DFHV's cease-and-desist order based on the evidence presented to it, and the existence of a new cease-and-desist order related to violations not at issue in this appeal does not affect that analysis.

Empower does not dispute that it is not registered with DFHV. *See, e.g., Yazam I*, 310 A.3d at 622. The company argues instead that, because DFHV could choose to revert to its "relaxed enforcement" policy of merely issuing warnings to Empower drivers, the impoundments "are not *caused* by Empower's lack of registration" but by DFHV itself. Therefore, according to Empower, DFHV still has not proven any immediate and irreparable harm to the public caused by Empower's failure to register. Yet the fact that DFHV also contributes to the harm does not absolve Empower—immediate and irreparable harm can flow from more than one source. *Cf. Hill v. McDonald*, 442 A.2d 133, 137 (D.C. 1982) ("The law does not recognize a single proximate cause of every injury. There may be several causes concurring to produce the harm."). And DFHV, as Empower admits, is within its rights in enforcing its regulations and statutes this way.[2]

There is also no dispute that impoundments pose an immediate and irreparable harm to the public. As Empower acknowledges, OAH "concluded that Empower's

---

[2] *See, e.g.*, 31 D.C.M.R. § 703.1 (describing the permissible enforcement actions, including impoundments, available to DFHV). Empower suggested at oral argument that this enforcement strategy was unreasonable. But given our previous decision not "to adopt a reading of the Act that would leave unregulated the activities of Empower and its subscribers/drivers," *Yazam I*, 310 A.3d at 622-24, and the fact that, at the time of oral argument, Empower still had yet to register, the agency's continued attempts to enforce its regulatory scheme against Empower are not unreasonable.

lack of registration may cause immediate and irreparable harm because of a risk that DFHV will *continue* to exercise its discretionary enforcement authority to stop, ticket, and impound the vehicles of Empower subscribers." In other words, although Mr. Yaeger's delayed medical care lacked a "sufficiently close" "causal link" to be considered a harm arising from Empower's nonregistration, the risk of impoundments faced no such barrier. At oral argument and in a post-argument letter, Empower argued that it had disputed the severity of that harm by stating, in scattered places throughout its brief, that DFHV's "choice to ticket drivers and briefly impound their vehicles" and "go after Empower subscribers who pose zero threat to public safety" did "not satisfy the regulatory prerequisites" for a cease-and-desist order.[3] It would require significant gap-filling to understand these phrases as arguments that, for example, a brief impoundment is not long enough to be irreparable to the car owner. Because it is not for the court to "create the ossature for the argument[] and put flesh on its bones," "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed

---

[3] At oral argument, Empower's counsel suggested that drivers using the unregistered Empower app did not warrant impoundment and did not pose a threat of harm to the public because they were not violating other safety laws. That is beside the central point that the impoundments may cause harm to the drivers as members of the public. Indeed, that these drivers committed no other safety violations and still had their cars impounded might instead support a conclusion that these impoundments *are* harmful, creating disruptions for otherwise innocent drivers who had no other reason to face an impoundment.

waived." *Comford v. United States*, 947 A.2d 1181, 1188 (D.C. 2008) (quoting

*United States v. Zannino,* 895 F.2d 1, 17 (1st Cir. 1990)).   OAH therefore properly

upheld the cease-and-desist order based on the immediate and irreparable harm

caused by nonregistration.[4]

## B.  Due Process

Next, we address Empower's due process arguments.  By way of additional

background, DFHV regulations provide that OAH "shall conduct a hearing" on a

cease-and-desist order within fifteen days of receiving a request for one.   31

D.C.M.R. § 705.4.  After OAH scheduled the hearing in this case, Empower filed a

motion to continue the hearing and, five days later, a request for discovery.  On the

same day that the request for discovery was filed, but apparently without having

received it yet, OAH denied the motion to continue the hearing.  Empower filed a

motion for reconsideration, OAH denied the discovery request and motion for

reconsideration, and the parties proceeded to the telephonic hearing.  Empower now

---

[4] Empower also argued that OAH committed legal error by finding statutory violations that DFHV did not cite in its cease-and-desist order and that those violations were not supported by substantial evidence.  Because we affirm based on the violation of registration laws that were cited in the cease-and-desist order, we do not reach these arguments.  Similarly, we need not decide the legal standards left open in *Yazam I*, 310 A.3d at 625-27, because the facts of the nonregistration violation, Mr. Yaeger's impoundment, and DFHV's policy of impoundment are uncontested.

argues that OAH abused its discretion and denied Empower due process by (1) denying discovery, (2) scheduling an expedited hearing with only eleven days' notice, and (3) requiring the hearing to be conducted by telephone.

First, Empower argues that the OAH erred in denying its motion for discovery because, without certain parts of that discovery, the company was unable to "press witnesses about their selective recitation of facts, documents, and videos." It specifically focuses on the denied discovery related to Emre Kilicceken, a driver who was allegedly using the Empower application when he was stopped by DFHV and failed to produce a valid U.S. driver's license.[5] OAH relied on testimony about this traffic stop as evidence that Empower did not perform the required background checks on its drivers and therefore caused immediate and irreparable harm to the public that way. Regardless of whether Empower had a due process right to discovery about this traffic stop,[6] any error in the denial of discovery was harmless because we base our affirmance on the undisputed immediate and irreparable harm caused to drivers whose vehicles are impounded for using an unregistered vehicle-

---

[5] Empower did note that "OAH rejected each one of Empower's discovery requests" and that DFHV "refused to . . . provide any other discovery," but it offered no explanation as to why those denials were an abuse of discretion and has thus waived this point. *See Comford*, 947 A.2d at 1188.

[6] Empower did not cite any authority, and we are not aware of any, holding that the denial of discovery of a similar nature in an administrative proceeding is a violation of due process.

for-hire application. *See supra* Part II.A & n.4. Any additional evidence about Mr. Kilicceken's stop would not affect the conclusion here.

Second, OAH did not abuse its discretion in scheduling the expedited hearing and denying the motion for a continuance. *See Nursing Unlimited Servs., Inc. v. D.C. Dep't of Emp. Servs.*, 974 A.2d 218, 221 (D.C. 2009) (reviewing OAH's denial of a motion for a continuance for abuse of discretion). Contrary to Empower's assertion, OAH did not base its denial of the continuance solely on the regulatory fifteen-day timeframe. *See* 31 D.C.M.R. § 705.4 ("Upon receipt of a timely request for a hearing, [OAH] . . . shall conduct a hearing within fifteen (15) calendar days after the date of receipt of the request . . . ."). Instead, in denying the continuance for "lack of good cause shown," OAH reasoned that Empower "failed to cite any legal authority" that justified deviating from the fifteen-day timeframe, that discovery is not usually permitted under OAH procedural rules, and that discovery would not be warranted in this case. In the order denying reconsideration, OAH further stated that the discovery requests were overbroad and that a cease-and-desist hearing is "not intended to be a comprehensive examination" but rather "a focused consideration" of DFHV's evidence. Given this logical discussion considering both Empower's reasons for seeking the continuance as well as the agency's own calendaring prerogatives, *see Nursing Unlimited Servs.*, 974 A.2d at 221 (finding no abuse of discretion based on "the ALJ's reasoned consideration" of the basis for the

continuance and balancing of "OAH's authority and duty to manage its calendar"), we see no abuse of discretion.

Finally, Empower never objected at the agency level to the telephonic nature of the hearing, so we do not reach that issue. *See Black v. D.C. Dep't of Hum. Servs.*, 188 A.3d 840, 847 (D.C. 2018) ("Claims not properly preserved in the administrative setting are generally considered forfeited . . . [a]bsent extraordinary circumstances.").

### III. Conclusion

For the foregoing reasons, OAH's order is affirmed.

*So ordered.*