*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 21-AA-748

CHRISTOPHER CONRAD, PETITIONER,

v.

DISTRICT OF COLUMBIA ALCOHOLIC BEVERAGE CONTROL BOARD, RESPONDENT.

Petition for Review of an Order of the
District of Columbia Alcoholic Beverage Control Board
(2021-PRO-000025)

(Submitted November 7, 2022                    Decided January 12, 2023)

*Brandi G. Howard*, *Abram J. Pafford*, and *Alicia M. Penn* were on the brief for petitioner.

*Karl A. Racine*, Attorney General for the District of Columbia at the time of submission, *Caroline S. Van Zile*, Solicitor General, *Ashwin P. Phatak*, Principal Deputy Solicitor General, *Graham E. Phillips*, Assistant Attorney General, and *Richard S. Love*, Senior Assistant Attorney General, were on the brief for respondent.

Before EASTERLY and MCLEESE, *Associate Judges*, and FISHER, *Senior Judge*.

MCLEESE, *Associate Judge*: Petitioner Christopher Conrad challenges an order of the District of Columbia Alcoholic Beverage Control Board renewing

Holiday Family Liquor, Inc.'s license to sell alcoholic beverages. We vacate the Board's order and remand the case for further proceedings.

## I. Factual and Procedural Background

Holiday applied for renewal of its license to sell alcoholic beverages. A group including Mr. Conrad opposed the application. Mr. Conrad lives near the store at issue. The local Advisory Neighborhood Commission (ANC) also opposed the application. To obtain renewal, Holiday was required to demonstrate that its liquor store "is appropriate for the locality, section, or portion of the District where [the establishment] is to be located." D.C. Code § 25-313(a). In making that determination, the Board must consider all relevant evidence, including the effect of the establishment on real-property values; the effect of the establishment on peace, order, and quiet, including the noise and litter provisions set forth in D.C. Code §§ 25-725 and -726; and the licensee's record of compliance with alcoholic-beverage statutes and regulations and any conditions imposed on the license, including the terms of any settlement agreement. D.C. Code §§ 25-313(b)(4) and -315(b)(1). Section 25-726 requires licensees to "take reasonable measures to ensure that the immediate environs of the establishment, including adjacent alleys, sidewalks, or other public property immediately adjacent to the establishment, or

other property used by the licensee to conduct its business, are kept free of litter." D.C. Code § 25-726.

The Alcoholic Beverage Regulation Administration (ABRA) conducted an investigation into Holiday's renewal application. The report of that investigation was admitted into evidence by the Board, and the Board also held an evidentiary hearing. The evidence before the Board included the following.

An ABRA investigator visited Holiday on ten occasions over a period of approximately one month. The investigator found no statutory or regulatory violations and no peace, order, or quiet issues. The investigator did see some individuals congregating in the parking lot on one occasion. On most occasions, some individuals were sitting in lawn chairs at the end of the small strip mall of which Holiday is a part.

The ABRA investigator spoke to an ANC Commissioner about the ANC's opposition to renewal. The ANC Commissioner reported that (1) Holiday was near to schools; (2) minors patronize Holiday and have bought alcohol there; (3) Holiday had been caught selling alcohol to minors three times in the last five years; and (4) a minor had been shot and killed right in front of Holiday.

The ABRA investigator searched police records and determined that there had been 163 calls for service to Holiday's address in the preceding year, for reasons including illegal drug activity, disorderly persons, shots fired, and persons with weapons. According to the ABRA investigator, none of those incidents was determined to be an ABRA violation. The ABRA report also noted two ABRA violations in the preceding three years: one for failure to follow a settlement agreement and one for sale to a minor.

A settlement agreement had been reached between a prior owner of the store and a community group. Among other things, the agreement required the store to refrain from selling alcohol or cigarettes to minors and to take reasonable steps to prevent loitering in front of the store. The agreement provided that complaints concerning the store would be forwarded to a business association, with written notice to the store.

At the evidentiary hearing, the ABRA investigator explained that the people sitting in lawn chairs did not appear to be on Holiday's property but instead seemed to be next to the property. The ABRA investigator acknowledged having seen litter near that group and on the adjacent road. The ABRA investigator explained that a school entrance was directly across the street from Holiday. The ABRA investigator

acknowledged that there also had been two additional sales to minors at Holiday, one in 2015 and one in 2016.

Holiday's owner testified about the store's use of security cameras and lighting, its efforts to prevent sales to minors, and its efforts to maintain the cleanliness of the store, the parking lot, and the areas surrounding the store. The owner testified that children were not permitted in the store without a parent. The owner also testified that litter in the area was from the nearby market, not the liquor store.

A community supporter of Holiday testified that the store was pretty clean for the area and that she had never seen a child in the store or crime inside the store. In her view, the store was not related to the criminal activity in the area. Rather, the problems in the area related to a market in the mall. Moreover, that witness testified that the entire ward in which the store is located is not safe.

Another community supporter acknowledged having seen some littering in and around the store "a while ago," but she testified that she no longer saw litter. She did not see people loitering in the parking lot, although she did see people in

lawn chairs on public property. In her view, the crime in the area related more to illegal drug use than to alcohol use.

The principal of a school located about a block away from Holiday testified that the school had had several instances of students purchasing alcohol or cigarettes at the store. The principal personally saw children in the store "purchasing items they should not have been purchasing." She also testified that families had complained about safety concerns because people loitered in front of the store and solicited children to participate in inappropriate activities. According to the witness, children were "curtailed from . . . passing" by the store because of the severe violence and trafficking at that location. In the incident in which the child was killed near the store, the intended targets frequented the store and were standing on the property of the store and the nearby market at the time of the shooting. (Although this issue is disputed, the Board found that the store was closed at the time of the shooting.)

The ANC Commissioner for the area including Holiday testified that it was common knowledge that the store sells alcohol to minors and had done so many times without being caught. The Commissioner described a complaint to the Department of Consumer and Regulatory Affairs ("DCRA") brought against

Holiday by a neighboring property owner about trash on her property that came from Holiday. That complaint, which was introduced into evidence, alleged that the store did not attend properly to trash, which blew onto the neighbor's property and attracted rodents and pests.

The ANC Commissioner also testified that alcohol and cigarettes had been found in the lockers of students at a nearby school. In the Commissioner's view, there was a nexus between the violence in the area and Holiday, and the store was disrupting the peace, order, and quiet of the community. The Commissioner also believed that the store was having a negative impact on property values in the area and that the store had not adopted reasonable measures to deal with litter. The ANC recommended that the Board deny the renewal application.

A former employee of the store admitted to having once sold alcohol to a minor by mistake.

Mr. Conrad presented police records indicating that there had been nine liquor-law violations at the address of Holiday during the preceding three years. Police records and reports also reflected numerous other assaultive and drug crimes in the vicinity of the store, including nine violent crimes involving a gun in the same

block in the preceding period of approximately two years. Mr. Conrad also presented numerous survey responses from individuals, stating among other things that the store did not properly deal with trash, that the store sold liquor to minors, and that violence and illegal activity near the store presented a danger to the community.

Finally, Mr. Conrad introduced photographs of the area behind the store depicting trash.

## II. Analysis

We will uphold a decision by the Board if the decision is in accordance with the law and supported by substantial record evidence. D.C. Code § 2-510(a)(3)(A), (E). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, a standard satisfied with a minimal amount of evidence, given [the court's] deference to [an] agency's informed judgment and special competence in the matters before it." *Acott Ventures, LLC v. D.C. Alcoholic Beverage Control Bd.*, 135 A.3d 80, 88 (D.C. 2016) (citations, brackets, and internal quotation marks omitted). If substantial evidence supports the Board's findings, the court "will not substitute [its] own judgment for that of the

[Board,] even though there may also be substantial evidence to support a contrary decision." *Id.* We give considerable deference to the Board's interpretation of ambiguous statutory requirements that the Board administers. *Levelle, Inc. v. D.C. Alcoholic Beverage Control Bd.*, 924 A.2d 1030, 1035-36 (D.C. 2007). We review the Board's evidentiary rulings for abuse of discretion. *Kopff v. D.C. Alcoholic Beverage Control Bd.*, 381 A.2d 1372, 1386 (D.C. 1977). An agency decision must "state the basis of its ruling in sufficient detail and be fully and clearly explained, so as to allow for meaningful judicial review of and deference to the agency's decision." *DC Appleseed Ctr. for L. & Just., Inc. v. D.C. Dep't of Ins., Sec., & Banking*, 214 A.3d 978, 985 (D.C. 2019) (internal quotation marks omitted).

## A. Bias

Mr. Conrad argues that one Board member stated before the close of the evidence that he would be voting in favor of the application. We conclude that this argument is not supported by the record and provides no basis for relief.

During the hearing, one Board member raised a concern that another Board member might have already indicated an intention to vote in favor of renewing the

license. The Board chairperson stated that no such thing had occurred. No party requested any further action, and the issue did not arise again.

In this court, the Board suggests that this issue may have arisen from a misunderstanding of a question that the Board member asked a witness who was testifying in support of the application. That suggestion seems plausible, given that the Board member asked the witness the following question: "And someone who does support the renewal, I am interested in knowing, you know, how close are you to this establishment?" We need not resolve that matter definitively, however, given that Mr. Conrad did not seek any relief from the Board on this issue. "Parties challenging agency action generally must raise their claims first before the agency, because consideration of a claim raised for the first time on petition for review deprives the administrative agency of its right to consider the matter, make a ruling, and state the reasons for its action." *Fournier v. D.C. Zoning Comm'n*, 244 A.3d 686, 688 (D.C. 2021) (internal quotation marks omitted). "[I]n the absence of exceptional circumstances, a reviewing court will refuse to consider contentions not presented before the administrative agency at the appropriate time." *Id.* (internal quotation marks omitted). We see no exceptional circumstances here warranting a departure from this general rule.

Mr. Conrad suggests more generally that the Board's rulings demonstrated bias against him in the handling of the case. We see no adequate basis for that suggestion. *Cf. generally, e.g.*, *Khawam v. Wolfe*, 84 A.3d 558, 569 (D.C. 2014) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion.") (internal quotation marks omitted).

## B. Failure to Enforce Subpoenas

Before the hearing, Mr. Conrad subpoenaed three former employees of the store whom he wished to question about alcohol sales to minors at the store. One of those witnesses appeared and ultimately testified, but the other two did not appear. When the Board asked Mr. Conrad what relief he was requesting with respect to the non-appearance of the witnesses, Mr. Conrad initially referred to provisions permitting the Board to go to the Superior Court to enforce subpoenas. Mr. Conrad immediately clarified, however, that he was not requesting a continuance.

In this court, Mr. Conrad argues that the Board erred by not taking steps to enforce the subpoenas. Mr. Conrad, however, did not ultimately ask the Board to take any further steps to enforce the subpoenas, instead making clear that he did not

want a continuance. We see no exceptional circumstances warranting consideration of this issue even though the issue was not properly presented to the Board.

## C. Consideration of Hearsay Evidence

Some of the evidence presented by Mr. Conrad was in the form of hearsay. Mr. Conrad argues that the Board did not correctly consider that evidence. We agree.

"Hearsay is generally admissible in administrative proceedings and can be regarded as substantial evidence." *Allen v. D.C. Rental Hous. Comm'n*, 538 A.2d 752, 754 n.8 (D.C. 1988). We have cautioned against placing undue or uncritical reliance on hearsay evidence. *See, e.g.*, *Compton v. D.C. Bd. of Psych.*, 858 A.2d 470, 479 (D.C. 2004) ("Where . . . the declarant is available to testify and be cross-examined, the practice of relying exclusively on hearsay is strongly discouraged and should be heavily weighted against the sponsoring party. In the ordinary administrative case, hearsay is generally disfavored because in all adjudicative proceedings, cross-examination and confrontation are the handmaidens of trustworthiness in the face of factual dispute.") (brackets and internal quotation marks omitted); *Coalition for the Homeless v. D.C. Dep't of Emp. Servs.*, 653 A.2d 374, 377-78 (D.C. 1995) ("[H]earsay found to be reliable and credible may

constitute substantial evidence especially where the evidence is uncontradicted; but without extrinsic corroboration . . . such evidence will be scrutinized carefully.") (citation, brackets, and internal quotation marks omitted).  On the other hand, we have also cautioned against generally dismissing evidence as insubstantial simply because the evidence is in the form of hearsay.  *See, e.g.*, *Compton*, 858 A.2d at 478 ("[T]his court has adopted a flexible approach [to hearsay evidence in administrative proceedings] that rejects any rigid threshold requirement of competent corroborating evidence . . . .") (internal quotation marks omitted); *James v. D.C. Dep't of Emp. Servs.*, 632 A.2d 395, 398 (D.C. 1993) (citing with approval *Johnson v. United States*, 628 F.2d 187, 190-91 (D.C. Cir. 1980) (rejecting "a per se approach that brands evidence as insubstantial solely because it bears the hearsay label;" "instead . . . evaluating the weight each item of hearsay should receive according to the item's truthfulness, reasonableness, and credibility") (brackets omitted)).

In the present case, the Board indicated that it would give exacting scrutiny to uncorroborated hearsay evidence.  Mr. Conrad objects to that approach, arguing that although reviewing courts must give exacting scrutiny to agency decisions based solely on uncorroborated hearsay, agency decisionmakers should not themselves apply an "exacting scrutiny" standard when considering hearsay evidence.  We agree with the Board on this broad point.  If reviewing courts give exacting scrutiny to

agency decisions based solely on uncorroborated hearsay, then it follows naturally that agencies should undertake exacting scrutiny before making decisions based solely on uncorroborated hearsay.

Mr. Conrad also argues that the Board erred by treating the hearsay evidence at issue as wholly uncorroborated. We agree with Mr. Conrad on that point.

First, the Board declined to rely at all on the community comments raising concerns about trash, sales to minors, and violence and illegal activity near the store. The Board's sole explanation for that decision was that "any factual statements contained within [those comments] are uncorroborated hearsay that cannot be relied upon as part of the Board's factual findings." That explanation appears to be inaccurate because, as described above, there was corroborative non-hearsay evidence relating to trash problems, sales to minors, and violence and illegal activity near the store. The Board thus erred by categorically declining to consider the community comments. *See generally, e.g., Panutat v. D.C. Alcoholic Beverage Control Bd.*, 75 A.3d 269, 277 & n.12 (D.C. 2013) (in holding evidence sufficient to support Board's order denying application for alcoholic-beverage license, court relied on, among other things, ANC Commissioner's testimony describing

constituent complaints about noise, littering, public urination, and public sexual activity associated with nightclub patrons).

Similarly, the Board refused to rely on statements in police reports prepared by Metropolitan Police Department officers describing criminal activity in or near the store. According to the Board, the statements in the reports were uncorroborated hearsay and could not be relied upon as "anything more than evidence of police activity." It is unclear whether the Board's refusal extended to the ANC report and other police records indicating that numerous offenses had occurred near the store. In any event, as described above, there was at least some corroborative non-hearsay evidence of offenses in or near the store.

Third, the Board declined to give "any probative weight" to the statements in the DCRA complaint about trash, because the statements were "not sufficiently corroborated." The Board did not address, however, the non-hearsay evidence that arguably provided some corroboration for the statements in the complaint. That evidence included photographs of trash behind the store, testimony from other witnesses about trash near the store, and what the Board found was an acknowledgment by the store's owner that the store had paid a fine related to litter and water drainage.

In sum, we conclude that the Board erred by broadly disregarding the hearsay evidence in this case as uncorroborated.

## D. Shifting the Burden of Proof

The Board correctly acknowledged that Holiday bore the burden of proving that the store is appropriate for its location. D.C. Code § 25-311(a); 23 D.C.M.R. § 400.1. Mr. Conrad argues, however, that the Board's order did not actually hold Holiday to that burden. We agree.

At a number of places, the Board's decision appears to put the burden of proof on the opponents of license renewal. For example, the Board stated that "it has not been established that crime and other issues in the area are traceable to the establishment"; stated that those issues "may be equally attributable" to other explanations; referred to the kind of evidence needed to make "a showing of inappropriateness"; and said that Holiday's contribution to the issues was "unclear." Given that Holiday bore the burden of proof, such uncertainties would tend to undermine rather than support license renewal. We do not mean to suggest that ambiguous references to the burden of proof by themselves will necessarily require

reversal.  *See, e.g.*, *Haight v. D.C. Alcoholic Beverage Control Bd.*, 439 A.2d 487, 494-95 (D.C. 1981) (although Board made findings that could be construed as placing burden on opponents rather than applicant, reversal not required given substantial evidence in support of applicant and absence of evidence to contrary).  It is important, however, for the Board to keep in mind that the absence of evidence on an essential point supports denial rather than granting of an application.  *See, e.g.*, *Tiger Wyk Ltd. v. D.C. Alcoholic Beverage Control Bd.*, 825 A.2d 303, 310-11 (D.C. 2003) (Board reasonably concluded that applicant failed to carry burden on issue of adverse effect on property values, where only evidence was that applicant did not know whether property values had decreased).

### E.  Criminal Activity

The Board concluded that the store was located in a high-crime area and that the Board had not been presented with "compelling or persuasive evidence" that the criminal activity in the area was "persuasively traceable to Holiday."  Mr. Conrad objects to that ruling in several respects.  We agree that a remand is necessary on this issue because, as we have already noted, the Board erred by categorically refusing to consider hearsay evidence that was potentially relevant to this issue and

by placing the burden of proof on this issue on those opposing license renewal rather than on Holiday.

Mr. Conrad raises an additional challenge to the Board's handling of evidence about criminal activity near the store: that the Board erred by precluding evidence of criminal activity near the store that did not involve ABRA violations. We are not persuaded by that argument. Although the Board chairperson did at one point suggest such a limitation, the chairperson quickly clarified that evidence of other criminal activity near the store would be admissible as long as the criminal activity had a nexus to the store. *See generally* D.C. Code § 25-313(b)(2) (directing Board to consider "effect of establishment on peace, order, and quiet").

## F. Property Values

The Board concluded that Holiday was not having a negative impact on property values. The Board's reasoning was (a) blight can have a negative impact on property values; (b) there was no evidence that "the property is substantially blighted"; and (c) the claim that the store was having a negative impact on property values was "purely speculative." Mr. Conrad argues that the Board erred in its handling of this issue. We agree.

First, as already noted, the Board appears to have placed the burden of proof on this issue on those opposing license renewal rather than on Holiday.

Second, the Board did not address the testimony from the ANC Commissioner expressing the view that the store was having a negative impact on property values in the area. The Board did generally acknowledge that it was required to give great weight to the recommendation of the ANC and that the ANC's concerns included the effect of the store on property values. *See* D.C. Code § 1-309.10(d)(3)(A) (requiring agencies to give "great weight" to "[t]he issues and concerns raised in the recommendations of the Commission"). The Board, however, did not actually give the ANC's recommendation "great weight" as that term has been defined and interpreted: "Great weight requires acknowledgment of the Commission as the source of the recommendations and explicit reference to each of the Commission's issues and concerns." *Id.*; *see also* D.C. Code § 1-309.10(d)(3)(B) ("The written rationale of the decision shall articulate with particularity and precision the reasons why the Commission does or does not offer persuasive advice under the circumstances. In so doing, the government entity must articulate specific findings and conclusions with respect to each issue and concern raised by the Commission."); *Kopff*, 381 A.2d at 1384-85 (Board must make "explicit reference to each ANC issue and concern as such, as well as specific findings and conclusions with respect to

each," to ensure that Board "analyze[s] the matter in a way that evidences serious attention to the ANC source itself"). To be clear, we do not mean to imply that the Board was required to accept the ANC Commissioner's opinion as fact. Rather, our point is simply that the Board was required to specifically address that opinion.

Mr. Conrad argues that Holiday failed to introduce any evidence at all that the store was not adversely affecting property values. Thus, Mr. Conrad argues, this court should reverse outright and remand with instructions that the Board deny the application. In this court, the Board argues that in fact there was substantial evidence to support an inference that Holiday was not adversely affecting property values. The Board's decision, however, does not rest on an analysis of the evidence and the inferences that could reasonably be drawn from the evidence. We therefore leave that issue for remand. *See generally, e.g.*, *DC Appleseed*, 214 A.3d at 995 ("In general, however, an administrative agency's decision can be sustained on review only on the grounds on which the agency actually relied. When a party asks us to affirm an agency's decision for a reason not relied on by the agency, we thus ordinarily remand the case for the agency's consideration in the first instance of the reason advanced by the party seeking affirmance.") (citation and internal quotation marks omitted).

## G. Litter

The Board concluded that it had not been presented with "compelling or persuasive evidence" that littering issues "are persuasively traceable to Holiday." Mr. Conrad objects to that ruling in several respects. We agree that a remand is necessary on this issue.

First, as previously noted, the Board erred by categorically refusing to consider hearsay evidence that was potentially relevant to this issue and by placing the burden of proof on this issue on those opposing license renewal rather than on Holiday.

Second, Mr. Conrad argues that the Board committed a legal error by treating it as irrelevant whether litter from the store ended up on nearby private property. We agree with Mr. Conrad. During the hearing, the Board ruled that evidence about litter on nearby private property would be irrelevant. The Board reiterated that conclusion in its decision. The Board reasoned as follows. (1) The license-renewal provisions direct the Board to consider whether the licensee has complied with its obligations under D.C. Code § 25-726. D.C. Code § 25-313(b)(2). (2) Section 25-726 requires licensees to "take reasonable measures to ensure that the immediate

environs of the establishment, including adjacent alleys, sidewalks, or other public property immediately adjacent to the establishment, or other property used by the licensee to conduct its business, are kept free of litter." D.C. Code § 25-726. (3) The phrase "immediate environs" is best interpreted as limited to the property of the establishment and to adjacent public property, not to adjacent private property.

We need not and do not express a definite view as to the reasonableness of the Board's interpretation of § 25-726. We do note, however, Mr. Conrad's argument that it would be arbitrary and capricious to interpret § 25-726 to permit a licensee to dump litter onto adjacent private property. Even assuming that § 25-726 does not reach litter that ends up on adjacent private property, we conclude that § 25-726 cannot reasonably be viewed as the sole measure of whether litter from a licensee is adversely affecting "peace, order, and quiet" in the vicinity of an establishment.

When considering an application for license renewal, the Board is directed to decide a broad question: whether the establishment at issue is "appropriate for the locality, section, or portion of the District where [the establishment] is to be located." D.C. Code § 25-313(a). In the present case, the Board made that assessment by considering the effect of the establishment on the area located within 1200 feet of the store. *See* 23 D.C.M.R. § 1607 (governing geographic boundaries of inquiry into

appropriateness of establishment). In making that determination, the Board was required to "consider all relevant evidence of record, including . . . [t]he effect of the establishment on peace, order, and quiet, including the . . . litter provisions set forth in" D.C. Code § 25-726. D.C. Code § 25-313(b)(2). The use of the term "including" indicates that the statutory list of considerations is illustrative rather than exhaustive. *See, e.g.*, *Young v. D.C. Dep't of Emp. Servs.*, 241 A.3d 826, 831 & n.14 (D.C. 2020) ("In statutes, as elsewhere, the participle *including* typically indicates a partial list.") (brackets and internal quotation marks omitted). In our view, the Board's inquiry into the impact of litter from an establishment thus cannot reasonably be limited to whether the establishment itself violated D.C. Code § 25-726. *See* 23 D.C.M.R. § 400.1(a) (directing Board to consider whether litter from establishment will "interfere with the peace, order, and quiet of the relevant area"); *Panutat*, 75 A.3d at 277 (in upholding denial of license application, court relies on evidence of littering "around and on nearby residential property" by patrons of establishment) (brackets and internal quotation marks omitted).

In sum, we conclude that the Board erred by ruling that evidence relating to litter on nearby properties was irrelevant. The Board does not appear to have consistently enforced that ruling, because it admitted evidence of the DCRA litter complaint brought by a residential neighbor. On remand, the Board should consider

whether its ruling requires reopening of the record. In any event, the Board on remand should not dismiss evidence of litter on nearby residential properties as categorically irrelevant.

## H. Record of Compliance

The Board concluded that license renewal was supported by Holiday's record of compliance with alcohol-control statutes, alcohol-control regulations, and the settlement agreement. D.C. Code §§ 25-313(b)(4) and -315(b)(1). Here too we conclude that a remand is required.

First, the Board's assessment of this issue may have been affected by the Board's decision to categorically disregard hearsay evidence of sales to minors as uncorroborated.

Second, the Board acknowledged that Holiday had been sanctioned three times over a five-year period for sales to minors. The Board pointed out, however, that revocation of a license is discretionary if the licensee is determined to have committed three such violations within a three-year period and becomes mandatory only if the licensee is determined to have committed five such violations in a four-

year period.  D.C. Code § 25-781(f)(1)-(5).  In the Board's view, denial of renewal was therefore unwarranted based on sales to minors.

Mr. Conrad argues that the Board erred by considering the statute governing license revocation when ruling on the distinct question whether a license should be renewed.  On that broad point, we are not persuaded by Mr. Conrad's argument.  The decision whether to revoke a license is to a degree analogous to the decision whether to renew a license.  *Cf., e.g.*, *Club Misty, Inc. v. Laski*, 208 F.3d 615, 618 (7th Cir. 2000) ("Illinois law treats a refusal to renew a liquor license as equivalent to revocation . . . .").  The Board therefore appropriately gave some weight to the provision governing revocation of license because of sales to minors.

We do, however, disagree with the Board's analysis in a narrower respect. The Board seemed to take the position that denial of renewal based on sales to minors would be permissible only if the requirements for revocation on that basis had been met.  That conclusion is not obvious from the text of the renewal statute, which seems to require a less rigid inquiry into appropriateness.  We do not believe that the Board has adequately explained a rationale for importing the specific requirements for revocation into the renewal statute.  Moreover, the decision whether to renew a license must take into account "all relevant evidence."  D.C. Code § 25-313(b).  A

problem with sales to minors thus is relevant to the overall appropriateness of an establishment even if that problem by itself would not require license revocation. The Board, however, appears to have treated the issue of sales to minors as irrelevant once the Board determined that the problem would not by itself require revocation. In our view, that was error. *Cf., e.g.*, *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (in applying "totality of the circumstances" test, courts should not utilize "divide-and-conquer analysis" by evaluating and rejecting factors in isolation rather than considering factors collectively) (internal quotation marks omitted).

The Board also concluded that no pattern of violation of the settlement agreement had been shown. We conclude that remand is warranted on this issue as well. First, the Board's consideration of this issue may have been affected by the Board's decision to categorically disregard hearsay evidence of sales to minors as uncorroborated. Second, the Board appears to have taken the view that conduct by Holiday that was inconsistent with the settlement agreement would be irrelevant unless the procedures under the settlement agreement relating to notice of complaints had been followed. The Board does not defend that line of reasoning in this court. We therefore consider that point abandoned. *Cf., e.g.*, *In re Shearin*, 764 A.2d 774, 778 (D.C. 2000) ("[F]ailure to address an issue in the brief results in waiving the issue on appeal.") (internal quotation marks and parentheses omitted).

## I. Remedy

Mr. Conrad argues that the Board's order was not supported by substantial evidence on several dispositive points and that this court should therefore reverse the order and remand with directions to deny the application. We decline to grant that request. As we have noted, the substantial-evidence standard can be satisfied "with a minimal amount of evidence," and this court "will not substitute [its] own judgment for that of the [Board,] even though there may also be substantial evidence to support a contrary decision." *Acott Ventures*, 135 A.3d at 88 (internal quotation marks omitted). We are not persuaded at this juncture that no reasonable decisionmaker could rule in favor of Holiday.

The Board argues that some of the errors alleged by Mr. Conrad were not prejudicial and that this court therefore should affirm the Board's ruling. We disagree. We are unable to say that the Board's decision was unaffected by the errors we have identified. *See, e.g.*, *R.O. v. Dep't of Youth Rehab. Servs.*, 199 A.3d 1160, 1167 (D.C. 2019) ("Our case law establishes that remand is required if substantial doubt exists whether the agency would have made the same ultimate finding with the error removed.") (internal quotation marks omitted).

For the foregoing reasons, we vacate the order of the Alcoholic Beverage Control Board and remand for further proceedings.

*So ordered.*